879 A.2d 1212 (2005)
379 N.J. Super. 526
HOUSE OF FIRE CHRISTIAN CHURCH, Plaintiff-Respondent,
v.
ZONING BOARD OF ADJUSTMENT OF the CITY OF CLIFTON and the City of Clifton, Defendants-Appellants, and
Livia Pepper, Intervenor-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 15, 2005.
Decided August 22, 2005.
*1214 Elisa Leib, First Assistant Municipal Attorney, argued the cause for appellant the City of Clifton (City of Clifton Law Department, attorneys; Gerald G. Friend, Municipal Attorney, and Ms. Leib, on the brief).
John D. Pogorelec, Clifton, attorney for appellant Zoning Board of Adjustment of the City of Clifton, joins in the brief of appellant the City of Clifton.
Frank A. Carlet, Clifton, argued the cause for intervenor-appellant Livia Pepper (Carlet, Garrison, Klein & Zaretsky, attorneys; Mr. Carlet, on the brief).
*1215 Robert J. Pansulla argued the cause for respondent House of Fire Christian Church (Gaccione, Pomaco & Malanga, attorneys; Mr. Pansulla, on the brief).
Before Judges STERN, S.L. REISNER and GRAVES.
The opinion of the court is delivered by
GRAVES, J.A.D.
Defendants, Zoning Board of Adjustment of the City of Clifton (the Board) and the City of Clifton (the City), appeal from an order dated October 28, 2003, remanding the application of plaintiff, House of Fire Christian Church (the Church), to the Board and invalidating an amended ordinance. The City also appeals from the trial court's determination that the City violated the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C.A. §§ 2000cc to 2000cc-5, and a subsequent order dated December 16, 2003, ordering the City to pay the Church's counsel fees and costs, pursuant to 42 U.S.C.A. § 1988, in the amount of $24,167.59.
At the outset, we recognize that the order dated October 28, 2003, specifically provides that the trial court "shall retain jurisdiction over this matter as it proceeds before the Clifton Board of Adjustment." Accordingly, the order is interlocutory and not appealable as of right. See Pressler, Current N.J. Court Rules, comment 2 to R. 2:2-3 (2005). Ordinarily, appellate courts seek to avoid "piecemeal litigation" and the "premature review of matters." Moon v. Warren Haven Nursing Home, 182 N.J. 507, 513, 867 A.2d 1174 (2005). Nevertheless, in an effort to facilitate a fair and final resolution of the disputed issues, we hereby grant leave to appeal nunc pro tunc. R. 2:4-4(b)(2).
In 2001, the Church purchased a piece of property (the lot) in Clifton at 835 Grove Street, located within an R-A1 Single Family Residential Zone which permits a house of worship as a conditional use. The Church applied to the Board seeking variance relief so that it could demolish the existing single-family residence and construct a new church facility in its place. The Board heard testimony regarding the Church's application on five separate dates from January 2, 2002, until October 2, 2002, when the Board denied the Church's application.
The Church proposed a two-story building with a total area of 4,992 square feet (2,496 square feet on the main level and 2,496 square feet in the basement). The plan included a sanctuary on the main level with seventy seats to accommodate the Church's congregation of approximately thirty-five to forty-five members, as well as future growth. The basement plan contained four classrooms for children's Sunday school, a fellowship hall for congregants to gather after services, a small kitchen, and storage. The plan also included a parking lot with eighteen parking spaces.
At the time of the Church's application, § 461-27(B) of the Code of the City of Clifton set forth the following conditional use requirements for houses of worship located in R-A1, R-A2, and R-A3 Single Family Residential Zones:
(1) Minimum lot size: twenty thousand (20,000) square feet.
(2) Lot width: one hundred (100) feet.
(3) Lot depth: one hundred (100) feet.
(4) Front yard: twenty (20) feet.
(5) Side yard: fifteen (15) feet.
(6) Rear yard: ten (10) feet.
(7) Height: three (3) stories or thirty-five (35) feet.
(8) Coverage: thirty-five percent (35%).
(9) Off-Street Parking: one (1) space for every four (4) seats.
*1216 The Church sought variance relief from requirement (1) minimum lot size (the lot is 17,325 square feet) and requirement (2) minimum lot width (the lot is 70 feet wide).
Following the second board hearing on March 20, 2002, two events occurred that affected the Church's application. First, on April 4, 2002, the City's Principal Planner, Robert Ringleheim, increased the number of required parking spaces from eighteen (based on the proposed seventy-seat sanctuary) to thirty-five parking spaces. This increase resulted from Ringleheim's determinations that the Sunday school classrooms constituted a "private school," requiring four additional parking spaces (one space for each of the four teachers), and that the fellowship hall constituted a "meeting room" or "place of public assembly," requiring thirteen additional parking spaces (one space for each one-hundred of the 1,300 square feet). Second, on May 7, 2002, the City adopted an amendment to § 461-27(B)(6) which changed the minimum rear yard setback requirement for houses of worship from ten feet to thirty-five feet. Thus, at the time of the third board hearing on June 5, 2002, the Church's proposed plan did not contain a sufficient number of parking spaces and it did not comply with the minimum thirty-five feet rear yard setback as required by the newly amended ordinance.
The Board focused on these deficiencies throughout the remainder of the hearings, and at the final hearing, on October 2, 2002, all seven members of the Board voted to deny the Church's application. Thereafter, the Church filed a complaint in lieu of prerogative writs in the Law Division.
After reviewing transcripts of the proceedings before the Board and after hearing oral argument from counsel, but without an evidentiary hearing, the trial court entered the order dated October 28, 2003, which: (1) remanded the Church's application to the Board for a consolidated hearing that will include site plan detail; (2) required the Church to provide one parking space per four seats of congregation, without additional consideration for accessory uses; (3) invalidated the amended ordinance changing the rear yard setback requirement; (4) determined that the City violated RLUIPA; and (5) ordered the City to pay the Church's counsel fees and costs for violating RLUIPA. We now affirm the remand to the Board, but we reverse the invalidation of the amended ordinance, the determination that the City violated RLUIPA, and the award of counsel fees and costs to the Church.
The Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -136, authorizes local boards of adjustment to allow departures (variances) from the requirements of a zoning ordinance pursuant to N.J.S.A. 40:55D-70. Municipal boards of adjustment have broad discretion in reviewing applications for variances, and their decisions are presumptively valid. Courts must not substitute their judgment for that of a board, but the decision to grant or deny a variance can be set aside if it is arbitrary, capricious, or unreasonable, or not supported by the evidence in the record. Cell South of N.J., Inc. v. Zoning Bd. of Adj. of W. Windsor Tp., 172 N.J. 75, 81, 796 A.2d 247 (2002); Macedonian Orthodox Church v. Plan. Bd. of Tp. of Randolph, 269 N.J.Super. 562, 572, 636 A.2d 96 (App.Div.1994); Trinity Baptist Church of Hackensack v. Louis Scott Holding Co., 219 N.J.Super. 490, 498, 530 A.2d 828 (App.Div.1987).
"Generally, a conditional use is `suitable to a zoning district but not to every location within that district.'" Coventry Square, Inc. v. Westwood Zoning Bd. of Adj., 138 N.J. 285, 294, 650 A.2d 340 (1994) (quoting Cardinal Props. v. Borough *1217 of Westwood, 227 N.J.Super. 284, 287, 547 A.2d 316 (App.Div.1988)). "Conditional uses are `uses ordinarily requiring special standards relating to traffic patterns, street access, parking, and the like in order to assure their functional and physical compatibility with the district as a whole and their appropriate integration into the district.'" Ibid. (quoting Exxon Co., U.S.A. v. Tp. of Livingston, 199 N.J.Super. 470, 477, 489 A.2d 1218 (App. Div.1985)). See also N.J.S.A. 40:55D-3 (defining term "conditional use"). It should be noted that "a conditional use applicant's inability to comply with some of the ordinance's conditions need not materially affect the appropriateness of the site for the conditional use." Coventry Square, supra, 138 N.J. at 297, 650 A.2d 340.
In order to obtain a conditional use variance pursuant to N.J.S.A. 40:55D-70(d)(3), an applicant has the burden of showing both positive and negative criteria. Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adj., 152 N.J. 309, 323, 704 A.2d 1271 (1998). Generally, to satisfy the positive criteria, the applicant must establish "special reasons," (i.e., that "the use promotes the general welfare because the proposed site is particularly suitable for the proposed use"). Ibid. (quoting Medici v. BPR Co., 107 N.J. 1, 4, 526 A.2d 109 (1987)). Satisfaction of the negative criteria requires that, "in addition to proving that the variance can be granted `without substantial detriment to the public good,' an applicant must demonstrate through `an enhanced quality of proof ... that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance.'" Ibid. (alteration in original) (quoting Medici, supra, 107 N.J. at 22, n. 12, 21, 526 A.2d 109). See also Coventry Square, supra, 138 N.J. at 299, 650 A.2d 340 (establishing standard related to positive and negative criteria for conditional use variances).
"If, however, the proposed use is inherently beneficial, an applicant's burden of proof is significantly lessened." Smart, supra, 152 N.J. at 323, 704 A.2d 1271 (citation omitted). Not only does "[a]n inherently beneficial use presumptively satisf[y] the positive criteria," but "satisfaction of the negative criteria does not depend on an enhanced quality of proof." Ibid. (citations omitted). "Instead, grant of the variance depends on balancing the positive and negative criteria." Id. at 324, 704 A.2d 1271 (citation omitted). In this case, all parties agree that construction of a church is an inherently beneficial use of the land. See State v. Cameron, 100 N.J. 586, 606, 498 A.2d 1217 (1985) (Clifford, J., concurring) ("[C]ourts have held that religious activity itself is in furtherance of public morals and the general welfare, and that religious institutions enjoy a highly-favored and protected status, which severely curtails the permissible extent of governmental regulation in this area." (internal quotation marks and citations omitted)). Thus, the Church met the burden of proving the positive criteria, and the Board was required to engage in a balancing of the positive and negative criteria.
In Sica v. Board of Adjustment of Township of Wall, 127 N.J. 152, 165, 603 A.2d 30 (1992), the Court "suggest[ed] the following procedure as a general guide to municipal boards when balancing the positive and negative criteria":
First, the Board should identify the public interest at stake. Some uses are more compelling than others....
Second, the Board should identify the detrimental effect that will ensue from the grant of the variance. Certain effects such as an increase in traffic, or some tendency to impair residential character, utility or value will usually attend any non-residential use in a residential zone. When minimal, such an *1218 effect need not outweigh an inherently beneficial use that satisfies the positive criteria.
Third, in some situations, the local board may reduce the detrimental effect by imposing reasonable conditions on the use. If so, the weight accorded the adverse effect should be reduced by the anticipated effect of those restrictions.
Fourth, the Board should then weigh the positive and negative criteria and determine whether, on balance, the grant of the variance would cause a substantial detriment to the public good. [Id. at 165-66, 603 A.2d 30 (internal quotation marks and citations omitted)].
The Court noted that "[t]his balancing, `[w]hile properly making it more difficult for municipalities to exclude inherently beneficial uses ... permits such exclusion when the negative impact of the use is significant. It also preserves the right of the municipality to impose appropriate conditions upon such uses.'" Id. at 166, 603 A.2d 30 (second and third alterations in original) (quoting Baptist Home of S. Jersey v. Borough of Riverton, 201 N.J.Super. 226, 247, 492 A.2d 1100 (Law Div. 1984)).
During the hearings before the Board, Maryann Bucci-Carter, the Church's planning expert, testified in accordance with the positive and negative criteria she identified in her Planning and Zoning Report. With respect to the first prong of the negative criteria (i.e., "the variance can be granted `without substantial detriment to the public good'"), Coventry Square, supra, 138 N.J. at 299, 650 A.2d 340 (quoting N.J.S.A. 40:55D-70), Bucci-Carter indicated the following:
The granting of the variance will not result in substantial detriment to the public good. The proposed use is highly compatible to the existing and surrounding uses, and any impact will be comparable to what already exists and occurs along the street and within 150 feet to 200 feet of the site along Grove Street. Therefore, the granting of the variance will not result in any substantially different impacts whatsoever. Houses of Worship share certain aspect[s] of compatibility with both residential and commercial areas throughout the state. They are sometimes found in core central business districts, where they have evolved as focal points of a developing community. At other times, they have developed in response to a growing residential community to meet the needs of the residents of the community and provide choices for worship. Parishioners of these facilities also provide further benefits to the community through various volunteer and charitable out-reach programs including visiting senior centers, nursing homes and hospitals.
The granting of the variance will not result in a substantial impact on the adjoining residential neighborhood. Houses of Worship are compatible with residential areas. This is borne out in the Clifton Zoning Ordinance itself, which permits Houses of Worship in residential zones. This is also consistent with the recommendations of the Master Plan, which suggested improved community services and facilities achieved through the provision in greater choices in worship.
Grove Street, a major collector, is designed to accommodate mixed-use traffic, therefore, there should be no substantial impact on traffic patterns in the area. The granting of the variance will not result in a substantial detriment to the community.
With respect to the second prong of the negative criteria (i.e., "the variance will not `substantially impair the intent and purpose of the zone plan and zoning ordinance'"), Coventry Square, supra, 138 *1219 N.J. at 299, 650 A.2d 340 (quoting N.J.S.A. 40:55D-70(d)), Bucci-Carter indicated the following:
The granting of the variance will not result in substantial detriment to the intent and purpose of the zone plan. The Master Plan itself has suggested allowing greater flexibility of uses in the area and it is clear that the Clifton Zoning Ordinance has determined that houses of worship are compatible with residential uses since residential zones are the only zones where houses of worship are permitted. This is because they serve the residential community. The particular configuration of this lot, although it is slightly smaller and more narrow than the norm established by the City of Clifton for a house of worship, will easily accommodate a smaller house of worship at this particular site to serve that purpose.
She concluded that the proposed use is inherently beneficial, there will be no detrimental effects resulting from the granting of the variance, and "[a]ny minor effects or impacts could be reduced or eliminated through the imposition of reasonable conditions such as re-designing the driveway location and turning movements, making aesthetic improvements to the site landscaping or building façade."
On the other hand, Michael Kauker, the expert planner for the objectors, testified that the surrounding properties would be "adversely affected" by the "overwhelming physical presence of this facility on a small site." Of great concern was the Church's noncompliance with the thirty-five feet rear yard setback requirement, which Kauker testified would adversely affect five adjacent properties as rear yard areas are "universally intended to provide for light, air and open space and areas for quiet passive recreation." He also cited problems with the topography of the land, the parking space deficiency, and concerns about safety and traffic congestion as reasons to deny the Church's application. Kauker concluded that the Church's undersized lot could not "appropriately accommodate the proposed use without significant negative effect on the surrounding area."
In its Resolution denying the Church's application for the conditional use variances, the Board set forth the following findings:
a. The applicant proposes to demolish a one-family dwelling which is a permitted use and construct a Church which is a conditional use, four of which conditions are not satisfied at the site in question;
b. The applicant is deficient in lot area, lot width, number of parking spaces, and rear yard setback;
c. Based upon the testimony of Michael Kauker, the objector's planner, the deficiencies may not be remedied, and the site cannot accommodate the proposed use;
d. Because of the aforesaid deficiencies, the Church is not particularly suited for the site and because of lot area deficiency, the lot width deficiency, the parking deficiency and the rear yard setback deficiency, at least five adjacent properties are negatively impacted;
e. Based upon the report of the Clifton Police Department and Wilbur Smith Associates, the curve and hump in the road limits visibility, and the topography slopes up very quickly to create a traffic safety problem;
f. The parking deficiency of 17 vehicles will negatively impact the surrounding streets in the neighborhood, and this deficiency may not be remedied without substantial detriment to the public good;
g. The entire area is substantially residential, and while the Church, which is an inherently beneficial use, is a conditional use in the zone with the inability *1220 to improve the deficiencies of lot area, lot width, lack of sufficient parking, and lack of rear yard setback constitutes a substantial detriment, and the grant of the aforesaid variances would substantially impair the intent and purpose of the zone plan and zone ordinance; and
WHEREAS, the Board finds from the testimony presented that the plaintiff has failed to sustain the burden of proof required for a grant of a use variance pursuant to Coventry Square v. Westwood Zoning Board of Adjustment, 138 N.J. 285, 650 A.2d 340;
WHEREAS, the Board further finds that the weight of the evidence shows that the grant of the variances will substantially impair the intent and purpose of the master plan and the zone ordinance which permits one-family dwellings; and
WHEREAS, the Board further finds that because of the safety problems created by access to and egress from the site, lack of parking on the site, and lack of safe and efficient vehicular movements on the site, will be detrimental to the health, safety, and general welfare of the neighborhood.
It is not entirely clear from the Board's Resolution (or from its limited discussion before voting to deny the application) whether the Board engaged in the appropriate balancing of positive and negative criteria for inherently beneficial uses set forth in Sica, supra, 127 N.J. at 165-66, 603 A.2d 30, especially with respect to considering whether reasonable conditions could be imposed on the Church's proposed use of its land. The Supreme Court has noted that "the key to sound municipal decision-making is a clear statement of reasons for the grant or denial of a variance." Kaufmann v. Plan. Bd. for Tp. of Warren, 110 N.J. 551, 566, 542 A.2d 457 (1988). "Local boards and their counsel should take pains to memorialize their decisions in resolutions that explain fully the basis on which the Board had acted, with ample reference to the record and the pertinent statutory standards." Commercial Realty & Res. Corp. v. First Atl. Props. Co., 122 N.J. 546, 566-67, 585 A.2d 928 (1991) (citation omitted). See also N.J.S.A. 40:55D-10(g) (requiring municipal agencies to memorialize decisions in a resolution). "[A] mere recital of testimony or conclusory statements couched in statutory language" will not suffice. N.Y. SMSA v. Bd. of Adj. of Tp. of Weehawken, 370 N.J.Super. 319, 332-33, 851 A.2d 110 (App. Div.2004) (citations omitted).
More significantly, the trial court found (and a reading of the transcripts from the board hearings confirms) that it was indecipherable whether the Board was considering the conditional use application, the site plan, or both. Accordingly, the trial court ordered that, upon remand, the applications for variance and site plan approval should not be bifurcated. We agree.
Under N.J.S.A. 40:55D-76(b), an application may be bifurcated, meaning that a developer may submit an application requesting approval of a variance and a subsequent application for site plan approval. In such an instance, "approval of the variance shall be conditioned upon grant of all required subsequent approvals." Ibid. Subsequent approval of the site plan may not be granted, however, "unless such approval can be granted without substantial detriment to the public good and without substantial impairment of the intent and purpose of the zone plan and zoning ordinance." Ibid. Hence, bifurcation "appears to require the developer to satisfy the negative criteria twice; once when the use variance is granted, and again when its subsequent site plan is submitted." Meridian Quality Care, Inc. v. Bd. of Adj. of Tp. of Wall, 355 *1221 N.J.Super. 328, 340, 810 A.2d 571 (App. Div.2002). This may be problematic where factors such as traffic flow, traffic congestion, ingress and egress, building orientation, and the nature of the surrounding properties are highly relevant to both the determination of whether to grant a use variance and the later decision to approve the site plan. Id. at 340-41, 810 A.2d 571. Thus, bifurcation "may not be appropriate if the board considers the use variance and site plan issues so interrelated that both applications should be considered in a single administrative proceeding, at which the board would decide the negative criteria based on the entire plan submitted." Id. at 340, 810 A.2d 571 (citations omitted).
In this case, the Church chose to bifurcate the application process by first applying for conditional use variances from the Board of Adjustment. Once the variances were granted, the Church planned to seek site plan approval from the Planning Board. Based on our review of the proceedings before the Board, it is apparent that this bifurcation caused considerable confusion. For example, during the second hearing, the following exchange took place between a member of the Board and the Church's planning expert:
COMMISSIONER CLUCK: . . . In other words, you indicated that you see no negative criteria, that this location would not be a detriment to the community.
Have you, at all, considered  the thing that seems to be predominant in our opinions here, and that is the traffic situation there.
Did you study that at all?
THE WITNESS: I am not a traffic engineer.
COMMISSIONER CLUCK: I understand that, but as part of a planner shouldn't that be some of your consideration to be a negative criteria, if indeed, it is a negative criteria.
THE WITNESS: Well, . . . I was trying to focus on the issue at hand. The traffic issue and the layout for that is an issue, I see, as relative  related more to the site plan application. Right now it's more of a use issue.
The site plan, itself, is conceptual. We've bifurcated that. And the number of parking spaces provided conforms so traffic-wise and parking-wise we conform.
By consolidating the application for conditional use variances and the application for site plan approval, all of the related issues pertaining to plaintiff's application will be addressed and resolved by the Board at the same time. Thus, ordering that the applications be consolidated on remand was appropriate in light of the circumstances. See Scholastic Bus Co. Inc. v. Zoning Bd. of Borough of Fair Lawn, 326 N.J.Super. 49, 58, 740 A.2d 657 (App.Div. 1999) (remanding to the board for a consolidated proceeding where traffic and environmental concerns, inherent in both the variance application and the site plan application, were "so intertwined as to render the bifurcation improvident").
While we agree with the trial court that plaintiff is entitled to "a new unbifurcated hearing," we do not agree that the amended ordinance changing the rear yard setback requirement from ten feet to thirty-five feet is "invalid" and "void." Zoning ordinances and their amendments, adopted pursuant to N.J.S.A. 40:55D-62(a), are presumptively valid, and the presumption can only be overcome by sufficient proof that the ordinance is arbitrary, capricious, or unreasonable. Rumson Estates, Inc. v. Mayor & Council of Borough of Fair Haven, 177 N.J. 338, 350, 828 A.2d 317 (2003); Pheasant Bridge Corp. v. Tp. of Warren, 169 N.J. 282, 289-90, 777 A.2d 334 (2001), cert. denied, 535 *1222 U.S. 1077, 122 S.Ct. 1959, 152 L. Ed.2d 1020 (2002).
"That a municipality may change its zoning ordinance during the pendency of a site plan application is beyond question. This is so even if the ordinance is amended in direct response to a particular application." Manalapan Realty, L.P. v. Tp. Comm. of Tp. of Manalapan, 140 N.J. 366, 378-79, 658 A.2d 1230 (1995) (citations omitted). "Because the enactment of, or amendment to, a zoning ordinance is a legislative act, [a municipality] is permitted to enact an amendment in response to objections to a proposed use of land as long as the amendment is consistent with the [MLUL]." Id. at 379, 658 A.2d 1230 (citation omitted). Such action shall, "in the absence of a showing to the contrary, be presumed to have been made in good faith and for the public interest and deemed lawfully controlling on the application." Allendale Congregation of Jehovah's Witnesses v. Grosman, 30 N.J. 273, 277, 152 A.2d 569 (1959) (citations omitted), appeal dismissed, 361 U.S. 536, 80 S.Ct. 587, 4 L. Ed.2d 538 (1960).
In this case, the record discloses a valid reason for amending the ordinance during the pendency of the Church's application. A memorandum dated April 3, 2002, from Robert Ringleheim, the Principal Planner for the City, to Robert P. Hammer, the City Manager, recommended that the minimum rear yard setback requirement for houses of worship be increased from ten feet to thirty-five feet. Ringleheim explained that houses of worship are permitted uses in R-A1, R-A2, and R-A3 Single Family Residential Zones, as well as eight other zoning districts within Clifton. Although the required rear yard setback for houses of worship located in the R-A1, R-A2, and R-A3 zoning districts was ten feet, the rear yard setback requirement for single-family residences located in those zones was thirty-five feet. Furthermore, in addition to houses of worship (and their related accessory uses), the only other conditional uses permitted in the R-A1, R-A2, and R-A3 zones are private and public schools, which also have a rear yard setback requirement of thirty-five feet. Thus, prior to the City's adoption of the amended ordinance, houses of worship were the only uses within the R-A1, R-A2, and R-A3 zoning districts that did not have a rear yard setback requirement of thirty-five feet.
The amendment, therefore, made the rear yard setback requirement for houses of worship consistent with the other land uses in the zoning district, and "consistency" was the reason cited by the City for amending the ordinance. Because of the statutory requirement that a zoning ordinance and its amendments "shall be uniform throughout each district for each class or kind of buildings or other structure or uses of land," N.J.S.A. 40:55D-62(a), we cannot conclude, on the record before us, that the amended ordinance is invalid or that the City's action was arbitrary, capricious, or unreasonable. See Allendale Congregation of Jehovah's Witnesses, supra, 30 N.J. at 278, 152 A.2d 569 (upholding off-street parking requirements that were "indiscriminately applicable to all buildings" and "designed to promote the public safety and general welfare by lessening `congestion in the streets'" (citations omitted)); Lakewood Residents Ass'n v. Congregation Zichron Schneur, 239 N.J.Super. 89, 100-02, 570 A.2d 1032 (Law Div.1989) (zoning ordinance considered reasonable where requirements for houses of worship "basically track the requirements for other permitted uses in the zone"). See also Rumson Estates, supra, 177 N.J. at 356-58, 828 A.2d 317 (noting that, in addition to N.J.S.A. 40:55D-62(a), other reasons for the uniformity requirement are "the constitutional guarantees of *1223 due process and equal protection that guard against the arbitrary and unreasonable exercise of the police power") (citation omitted).
In the apparent absence of discovery, and without conducting an evidentiary hearing, the trial court concluded that the City, in amending the ordinance, violated RLUIPA. RLUIPA, which was passed by Congress in 2000 in response to a Supreme Court decision invalidating the Religious Freedom and Restoration Act of 1993, see generally Cutter v. Wilkinson, ___ U.S. ___, ___, 125 S.Ct. 2113, 2117-18, 161 L.Ed.2d 1020 (2005), provides the following "[g]eneral rule" for "[p]rotection of land use as religious exercise":
No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution 
(A) is in furtherance of a compelling government interest; and
(B) is the least restrictive means of furthering that compelling interest.
[42 U.S.C.A. § 2000cc(a)(1).]
RLUIPA, by its terms, applies to any case in which
the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved. [42 U.S.C.A. § 2000cc(a)(2)(C).]
"[A] government agency implements a `land use regulation' only when it acts pursuant to a `zoning or landmarking law' that limits the manner in which a claimant may develop or use property in which the claimant has an interest." Prater v. City of Burnside, Ky., 289 F.3d 417, 434 (6th Cir.), cert. denied, 537 U.S. 1018, 123 S.Ct. 550, 154 L.Ed.2d 425 (2002). See also 42 U.S.C.A. § 2000cc-5(5) (defining "land use regulation"). Nevertheless, RLUIPA "does not provide religious institutions with immunity from land use regulation, nor does it relieve religious institutions from applying for variances, special permits or exceptions, hardship approval, or other relief provisions in land use regulations, where available without discrimination or unfair delay." 146 Cong. Rec. S7774-01 at S7776 (July 27, 2000) (joint statement of Sens. Hatch and Kennedy) [hereinafter Joint Statement].
The trial court concluded that the City violated RLUIPA because "this Council did not express any compelling municipal interest and did not give any valid reason for changing the ordinance." The trial judge explained the basis for his determination as follows:
It is very clear, the justification for changing the ordinance at the particular time it was changed from ten feet to 35 foot setback requirement, the justification given was that the ordinance needed to be consistent with the requirement for homes, however, neither the Municipal Council nor the planner offered any valid reason for wanting to make the ordinance consistent with the 35 foot requirement for homes. Places for religious worship had been a permitted conditional use in Clifton residential districts and other districts, maybe, but at least residential districts for at least 18 or so years, and during all of that time the rear setback requirement for homes was 35 feet and the rear setback for places of worship was ten feet. There was no change in that portion of the ordinance for those years that it remained in effect and then, during the pendency of this application, the ordinance was changed without giving a reason *1224 other than the need for uniformity. The City did not even set forth why the original ordinance requires a 35 foot setback requirement for homes and a ten foot setback for churches. There was a reason, certainly, why there was such a difference in the original ordinance. The failure of the City to even set forth the reason for that original difference while this application is pending . . . and just the failure to give any rational explanation makes it very, very clear that this was an attempt that succeeded to deprive the plaintiff of its statutory and constitutional rights under [RLUIPA].
The judge further determined that "the change from 18 parking spaces to a requirement of 35 parking spaces . . . was also violative of the Federal statute and the constitutional rights of the plaintiff."
We are convinced that the trial court erred by effectively shifting the burden of persuasion to the City. Without finding that the amended ordinance placed a "substantial burden" on the "religious exercise" of the Church, the trial judge merely concluded that the City "took steps to make it more difficult for the Church to build what is a permitted use by changing a significant ordinance requirement during the pendency of the application in question without legal justification," and "[t]hat change tainted the entire process."
RLUIPA sets forth the applicable burdens of persuasion as follows:
If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause [of the First Amendment to the United States Constitution] or a violation of [RLUIPA], the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice challenged by the claim substantially burdens the plaintiff's exercise of religion.
[42 U.S.C.A. § 2000cc-2(b).]
Thus, to prevail on a RLUIPA claim, the plaintiff has the initial burden of demonstrating that the land use regulation "actually imposes a `substantial burden' on religious exercise." Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 760 (7th Cir.2003), cert. denied, 541 U.S. 1096, 124 S.Ct. 2816, 159 L.Ed.2d 262 (2004). If the plaintiff makes such a showing, then the burden shifts to the local government to demonstrate that the challenged regulation "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C.A. § 2000cc(a)(1)(A)-(B).
We note that the burden-shifting analysis prescribed by RLUIPA is similar to the way in which New Jersey's courts analyzed religious zoning issues prior to the enactment of RLUIPA. See, e.g., Macedonian Orthodox Church v. Plan. Bd. of Tp. of Randolph, supra, 269 N.J.Super. at 571, 636 A.2d 96 (noting that legislation that burdens the exercise of religion "may be constitutional if no less restrictive means exists to achieve some overriding state interest" (citing N.J. State Bd. of Higher Educ. v. Bd. of Dirs. of Shelton Coll., 90 N.J. 470, 482-83, 448 A.2d 988 (1982))); Jehovah's Witnesses Assembly Hall of S.N.J. v. Woolwich Tp., 223 N.J.Super. 55, 60-61, 537 A.2d 1336 (App.Div.1988) (suggesting that in deciding religious zoning cases, courts must: (1) determine whether the activity allegedly burdened by the zoning ordinance is in fact religious; (2) determine whether the ordinance imposes a significant burden on religious practice; (3) consider reasonable alternatives; and (4) carefully identify and evaluate the governmental interest in establishing and maintaining its zoning plan); Burlington Assembly of God Church v. Zoning Bd. of *1225 Adj. Tp. of Florence, 238 N.J.Super. 634, 641, 570 A.2d 495 (Law Div.1989).
The term "religious exercise" is broadly defined by RLUIPA to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C.A. § 2000cc-5(7)(A). Under RLUIPA, "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." 42 U.S.C.A. § 2000cc-5(7)(B). It is clear that the Church's proposed plan to build a house of worship on its property and to use the proposed structure for holding church services for members of its congregation constitutes "religious exercise." As explained by the co-sponsors of RLUIPA as part of the need for this legislation:
The right to assemble for worship is at the very core of the free exercise of religion. Churches and synagogues cannot function without a physical space adequate to their needs and consistent with their theological requirements. The right to build, buy, or rent such a spaces is an indispensable adjunct of the core First Amendment right to assemble for religious purposes.
[Joint Statement at S7774.]
The term "substantial burden" is not defined by RLUIPA; rather, its proponents intended that the term "be interpreted by reference to Supreme Court jurisprudence," and that it "not ... be given any broader interpretation than the Supreme Court's articulation of the concept of substantial burden o[n] religious exercise." Joint Statement at S7776. In Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214 (11th Cir.2004), cert. denied, ___ U.S. ___, 125 S.Ct. 1295, 161 L.Ed.2d 106 (2005), the court explained that the Supreme Court's "articulation of what constitutes a `substantial burden' has varied over time." Id. at 1226 (citations omitted). After reviewing a number of federal cases, the Eleventh Circuit concluded:
[A] "substantial burden" must place more than an inconvenience on religious exercise; a "substantial burden" is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly. Thus, a substantial burden can result from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct.
[Id. at 1227.]
Because the Church's application must be reconsidered by the Board, it is not possible, at this stage of the proceedings, to conclude that requiring the Church to comply with the conditional use ordinance (or to successfully seek variance relief therefrom) is anything more than an inconvenience to the Church. Accordingly, we reverse the trial court's decision that the City violated RLUIPA and the award of counsel fees and costs to the Church under 42 U.S.C.A. § 1988.
To summarize, we affirm the trial court's decision to remand the Church's application to the Board for a consolidated hearing, but we find insufficient justification in the present record to invalidate the amended setback ordinance or to conclude that the City violated RLUIPA. We decline to interfere with the trial court's tentative ruling regarding parking spaces ("if the [Church] is going to use the premises the way it described previously in the minutes, then I rule that additional parking spaces are not required").
The Church's RLUIPA claim shall not be reconsidered prior to a final decision by the Board. See Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347, 353-54 (2d Cir.2005) (concluding that the plaintiff's RLUIPA claim was not ripe and noting *1226 that "the ripeness doctrine's `basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements'") (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977)); Taylor Inv., Ltd. v. Upper Darby Tp., 983 F.2d 1285, 1294-95 (3d Cir.) (stating that the plaintiff's due process and equal protection claims ripen "only after the zoning hearing board takes final and definitive action through its variance or review procedures"), cert. denied, 510 U.S. 914, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993).
Affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion.