**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4005-19

OLD ORCHARD VILLAGE
HOMEOWNERS ASSOCIATION,
INC.,

     Plaintiff-Appellant,

v.

MUNICIPALITY OF PRINCETON,

     Defendant-Respondent.

_____

Argued September 22, 2021 – Decided November 3, 2021

Before Judges Fuentes, Gooden Brown, and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0994-19.

Robert F. Simon argued the cause for appellant (Herold Law, PA, attorneys; Robert F. Simon, of counsel; George W. Crimmins, on the briefs).

Anthony R. Todaro argued the cause for respondent (Mason, Griffin & Pierson, PC, attorneys; Kevin A. Van Hise, of counsel; Anthony R. Todaro, on the brief).

PER CURIAM

Plaintiff Old Orchard Village Homeowners Association appeals from an order dismissing with prejudice its action in lieu of prerogative-writs challenge to defendant Municipality of Princeton's adoption of a rezoning ordinance allowing the development of sixty-five affordable-housing units. Because we agree Princeton did not act arbitrarily, capriciously, or unreasonably in adopting the ordinance, we affirm.

I.

In 1975, our Supreme Court held that developing municipalities are under a constitutional obligation to provide a realistic opportunity for the creation of affordable housing. S. Burlington Cnty. N.A.A.C.P. v. Mount Laurel Twp. (Mount Laurel I), 67 N.J. 151, 174 (1975). The Court clarified and reaffirmed that constitutional requirement in South Burlington County N.A.A.C.P. v. Mount Laurel Township (Mount Laurel II), 92 N.J. 158 (1983). While noting the "widespread non-compliance with the constitutional mandate" of Mount Laurel I, the Court in Mount Laurel II acknowledged the "municipalities around the State that have responded to our decisions by amending their zoning ordinances to provide realistic opportunities for the construction of low and moderate income housing." Id. at 198, 200-01.

A-4005-19

A.

In 2013, Princeton Borough and Princeton Township consolidated into the Municipality of Princeton. Before the consolidation, the "1996 Princeton Community Master Plan" applied to both the Borough and the Township. After the consolidation, the Princeton Planning Board readopted the 1996 Princeton Community Master Plan as Princeton's Master Plan.

Throughout its Master Plan, Princeton recognizes its commitment to the development of affordable housing. The Master Plan describes Princeton's "community character & quality of life" as including "[m]aintain[ing] a mix and balance of uses that crosscut socio-economic lines" with a "variety of housing . . . continually expanding to include different unit types, and sizes, so that they are affordable to many ages and income levels." The Master Plan incorporates the "promot[ion of] a variety of housing . . . to meet the diverse needs of its citizens of different ages, ethnicity and income" in the Planning Board's "mission statement." According to the Master Plan, Princeton "strives to be a balanced community" and has a goal "meeting the community's affordable housing obligation."

The Master Plan's Land Use Element section also enumerates Princeton's goals, including: "[m]aintain[ing] a balanced community that offers a mix of

3

land . . ."; "[g]uid[ing] future development with due regard to its impact upon future taxes, as well as other costs that might adversely affect residents and diminish the opportunity for low and moderate income persons to continue to reside within the community"; and "[c]ontinu[ing] to provide the community's fair share of affordable housing."  As for "residential uses," the Land Use Element section expressly states Princeton's land use plan "endeavors to maintain and enhance the diversity of residential options available in Princeton."

The Housing Element[1] of the Master Plan lists as a goal "[p]rovid[ing] Princeton's regional fair share of affordable housing for low, moderate and middle income households."  The Housing Element describes what actions Princeton has taken in past years to provide affordable housing and what future actions it intends to take, including rezoning particular areas.  The 2008 Third Round Fair Share Plan states "[t]he Township will continue to seek other opportunities to increase affordable housing obligations."

B.

Like the municipalities recognized by the Court in Mount Laurel II, 92 N.J. at 200-01, as being compliant with Mount Laurel I, Princeton has amended

---

[1]  The Housing Element was amended in 2020.  Unless otherwise indicated, when discussing the Master Plan, we reference the version in existence when Princeton adopted the ordinance at issue.

its zoning ordinances to enable the construction of affordable-housing units. According to the 2008 Housing Element of the Master Plan, Princeton Borough had rezoned three properties to permit the construction of eighty-six affordable-housing units, and Princeton Township had zoned two sites for affordable housing and planned to rezone two areas to permit affordable housing.

On March 11, 2019, the Princeton Council introduced Ordinance 2019-10, which had the express purpose of amending the Princeton Code and Zoning Map to create a new affordable-housing zone:  the "AH-3 Affordable Housing 3 Residential District."  The new zone would "create a realistic opportunity for the construction of low-and moderate-income housing in the Municipality of Princeton and thereby address the municipality's fair share housing obligation pursuant to the New Jersey Fair Housing Act," N.J.S.A. 52:27D-301 to -329.  In the new zone, "[m]ultifamily residential developments" could contain "a maximum of [sixty-five] affordable family dwelling units . . . in a one hundred percent affordable housing development."

The ordinance had the effect of rezoning the property identified on Princeton's tax maps as Block 901, Lot 21 (the property) from the S-2 Service District No. 2, which had permitted uses ranging from freight yards to motels, to the AH-3 Affordable Housing-3 District.  The property is a three-acre vacant

lot, previously used as an animal shelter. In 2017, the Planning Board approved a site plan for a two-story, 25,000 square-foot office building on the property. According to the property owner, market conditions created "very little demand" for an office building in that area. A developer subsequently approached the property owner and suggested demand would be greater for housing, especially affordable housing. The property has a street address of 900 Herrontown Road and is bounded by Herrontown Road, Mt. Lucas Road, and Old Orchard Lane. Plaintiff is a homeowner's association that owns seven acres located on Old Orchard Lane, adjacent to the property.

Pursuant to N.J.S.A. 40:55D-26(a) and -64, the Council referred the proposed ordinance to the Planning Board for its review. On March 21, 2019, the Planning Board held a public meeting regarding the proposed ordinance. Princeton's Planning Director Michael La Place opined that creating a new affordable-housing zone was consistent with the goals of the 2017 Reexamination Report regarding the Master Plan and stated the Master Plan and the 2017 Reexamination Report contained language about developing more affordable housing. Carl Peters, who identified himself as a planner appearing on behalf of someone who lived on Old Orchard Lane, questioned how the proposed ordinance "fit" within the Master Plan, focusing on the density

permitted by the proposed ordinance. He suggested reducing the maximum number of units per acre allowed in the ordinance.

The Board's attorney Gerald Muller opined the proposed ordinance was consistent with the Master Plan. He also suggested that if the Council adopted the ordinance, to "cover[] all bas[e]s," it could identify its reasons in a resolution pursuant to N.J.S.A. 40:55D-62(a), which enables a governing body to adopt a zoning ordinance inconsistent with a master plan if it sets forth its reasons for doing so in a resolution. After Muller reviewed some proposed changes to the ordinance language, the Planning Board voted unanimously that the ordinance with those proposed changes was consistent with the Master Plan.

In a written memorandum certified by the Planning Board's secretary as the "ordinance (AH3) review memorandum," Planning Director La Place confirmed the board's recommended language changes and findings, stating:

> The Board found that the proposed ordinance was consistent with the Master Plan as the Land Use Element cites as one of its goals "Continue to provide the community's fair share of affordable housing." The 2017 Reexamination report further supports the Master Plan goals and cited the need to provide affordable housing units as the report also recommends: "Future affordable housing sites will need to be based upon smart growth principles[]" and "Develop zoning strategies for providing and integrating affordable housing into the community."

A-4005-19

Noting Peters's assertion that the proposed ordinance conflicted with "other Master Plan goals," La Place also referenced the Board attorney's suggestion that the Council prepare a resolution identifying the reasons supporting the adoption of the ordinance in accordance with N.J.S.A. 40:55D-62(a).

After considering and agreeing with the suggested amendments and reintroducing the revised proposed ordinance, the Council conducted a public hearing regarding the ordinance on April 8, 2019. Planner Peters and an attorney appeared on behalf of plaintiff. Peters recognized that creating affordable housing was one of the concerns of the Master Plan but again asserted the proposed ordinance was not consistent with the Master Plan. The Council's planner testified, comparing the concerns raised by Peters and the potential benefits of the proposed ordinance, including that it would generate less traffic than the previously approved office-building use and would provide Princeton with an opportunity to meet its constitutional obligation to provide affordable housing. He concluded the choice was "obvious."

After hearing extensive public comment, the Council voted unanimously to adopt the proposed ordinance and a resolution memorializing its reasons for adopting the ordinance, "notwithstanding any potential inconsistencies with the Princeton Master Plan":

- Princeton has a constitutional obligation to create a realistic opportunity for the development of its fair share of the region's need for low- and moderate-income (affordable) housing.

- Princeton is under the jurisdiction of the Superior Court of New Jersey, Law Division, and is working with the Fair Share Housing Center, a court-appointed special master, and a court-appointed mediator to develop a compliance plan—including a housing element and fair share plan and implementing ordinances—to meet its third round affordable housing obligation.

- The [property] is a ±three-acre vacant parcel located on the corner of Herrontown Road and Mt. Lucas Road, abutting residential development to east and south, and within walking distance of New Jersey State Highway Route 206, on which New Jersey Transit operates a bus route.

- A reputable developer of affordable housing has expressed a desire to develop the site with sixty-five units of safe, attractive housing that will be affordable to very low, low, and moderate-income households.

- The development will consist entirely of affordable units, in contrast to traditional "inclusionary" developments in which only twenty percent (or less) of the total number of units are affordable, and the developer has not sought any financial contributions from the municipality.

- The property is currently in the S-2 Service 2 Zone; in order for the property to be developed as proposed, a change in zoning is needed.

- Ordinance No. 2019-10 creates the necessary zoning to allow the property to be developed with up to sixty-five units of safe and attractive residential housing, all of which will be affordable to very low, low, and moderate income households and that will help to address Princeton's third round affordable housing obligation.

- Consistent with the land use element of the Master Plan and the 2017 Master Plan Reexamination Report, the zoning change effectuated by the adoption of Ordinance No. 2019-10 will help Princeton "continue to provide the community's fair share of affordable housing" in a manner "based upon smart growth principles" and in a location that is within walking distance of shops, services, and public transportation and that is not isolated from the balance of the community.

- To the extent that the zoning standards being created by Ordinance 2019-10 are inconsistent with other goals and provisions of the Master Plan, such inconsistencies are outweighed by the opportunity [to] create a substantial number of safe and attractive affordable housing units in an appropriate location and in furtherance of Princeton's constitutional obligation.

On December 18, 2019, defendant executed a settlement agreement with Fair Share Housing Center (FSHC), identifying defendant's affordable housing obligation and indicating how defendant would satisfy that obligation. Plaintiff does not dispute that the construction of affordable-housing units on the property

was included in defendant's compliance plan. After a fairness hearing, the trial court approved the settlement in a February 20, 2020 order.

## C.

Six weeks after the Council adopted the ordinance, plaintiff filed an action in lieu of prerogative writs challenging its validity. Plaintiff alleged the ordinance constituted impermissible spot-zoning and was inconsistent with the Master Plan. Plaintiff also contended defendant had "failed to provide adequate reasons in a resolution for acting inconsistent with" the Master Plan.

After conducting a bench trial, the trial court in a decision placed on the record on May 19, 2020, held plaintiff had failed to establish defendant acted in an arbitrary, capricious, or unreasonable manner by adopting the ordinance after considering plaintiff's concerns and finding the ordinance created "the possibility for an attractive[,] very beneficial development that would further the goal of [defendant] . . . reaching its affordable housing requirements." The trial court found that by providing affordable housing, the ordinance promoted a use "explicitly provided" in the Master Plan and was consistent with the Master Plan. The trial court saw nothing wrong with the Council's additional conclusion pursuant to N.J.S.A. 40:55D-62(a) that even if inconsistencies existed, "the need for affordable housing and a hundred percent affordable housing as done

carefully as this ordinance was designed outweighed any of the inconsistences that had been raised."  The trial court rejected plaintiff's spot-zoning argument, finding "affordable housing has a general benefit to the general welfare."  On May 20, 2020, the trial court issued an order dismissing the complaint with prejudice.

On July 9, 2020, the Planning Board adopted Princeton's Third Round Housing Plan Element and Fair Share Plan (HEFSP), and the Council endorsed it on July 13, 2020.  Plaintiff does not dispute that HEFSP amended the Master Plan to provide for the implementation of defendant's affordable-housing compliance plan under its settlement with FSHC, including the construction of affordable-housing units on the property pursuant to the ordinance.

## II.

On appeal, plaintiff argues the trial court erred in finding the adoption of the ordinance was consistent with the Master Plan, the Land Use Element of the Master Plan, and the Housing Element and Fair Share Plan, faulting the trial court for, among other things, considering the 2017 Reexamination Report. Plaintiff contends the trial court erred in finding the Council had complied with N.J.S.A. 55D-62(a), faulting the Planning Board for failing to conduct a comprehensive consistency review and the Council and trial court for failing to

"identify and analyze specific substantial inconsistencies with the Master Plan and to determine consistency with the Housing Element." Plaintiff also argues the trial court erred in declining to invalidate the ordinance as spot zoning.

In response, defendant asserts the trial court correctly found the ordinance was consistent with the goals of the Master Plan and its adoption was a valid exercise of defendant's authority and correctly rejected defendant's spot-zone argument. Finally, defendant also contends its 2020 implementation of HEFSP renders plaintiff's arguments moot.

A.

The "power to zone is fundamentally an exercise of the State's police power." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 252 (2015). "The 1947 New Jersey Constitution vested that power in the Legislature and authorized the Legislature to delegate the zoning power to municipalities" through its enactment of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163. Ibid.

Under the MLUL, municipalities have the authority both to enact and amend zoning ordinances. See N.J.S.A. 40:55D-62(a); see also Riya Finnegan LLC v. Twp. Council of S. Brunswick, 197 N.J. 184, 191 (2007). A municipality may amend an ordinance "as it may deem necessary and proper for the good

government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants." N.J.S.A. 40:48-2; see also State v. Clarksburg Inn, 375 N.J. Super. 624, 633 (App. Div. 2005). A municipality may amend a zoning ordinance while a site-plan application is pending or in direct response to a pending application. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378-79 (1995); see also House of Fire Christian Church v. Zoning Bd. of Adjustment of Clifton, 379 N.J. Super. 526, 541-42 (App. Div. 2005).

Our role in reviewing zoning ordinances is limited. Zilinksy v. Zoning Bd. of Adjustment of Verona, 105 N.J. 363, 367 (1987). We don't judge the wisdom of a zoning change. Kaufmann v. Planning Bd. for Warren, 110 N.J. 551, 558 (1988). Land-use decisions "are entrusted to the sound discretion of the municipal boards," ibid., because local officials "are best suited to make judgments concerning local zoning regulations" due to their familiarity with their communities, Pullen v. Twp. of S. Plainfield Planning Bd., 291 N.J. Super 1, 6 (App. Div. 1996).

Accordingly, we presume a governing municipal body's actions are valid. See Griepenburg, 220 N.J. at 253 (noting "well-established" principle that a presumption of validity insulates a zoning ordinance from attack); Clarksburg

Inn, 375 N.J. Super. at 632 (holding courts review a municipal ordinance with a "presumption of validity and reasonableness"). We defer to a local board's actions and factual findings as long as they are supported by substantial evidence in the record and are not arbitrary, unreasonable, or capricious. Jacoby v. Zoning Bd. of Adjustment of Borough of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015); see also Jock v. Zoning Bd. of Adj. of Wall, 184 N.J. 562, 597 (2005) ("public bodies, because of their peculiar knowledge of local conditions, must be allowed wide latitude in their delegated discretion"); Rowatti v. Gonchar, 101 N.J. 46, 52 (1985) (holding a board's factual determinations are entitled to "great weight" and should not be disturbed "unless there is insufficient evidence to support them"). However, a local board's "legal determinations are not entitled to a presumption of validity and are subject to de novo review." Wilson v. Brick Twp. Zoning Bd. of Adjustment, 405 N.J. Super. 189, 197 (App. Div. 2009).

The party challenging an ordinance must overcome its presumption of validity by establishing the board's decision to enact the ordinance was "clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the [zoning] statute." Manalapan, 140 N.J. at 380 (quoting Bow & Arrow Manor, Inc. v. Town of West Orange, 63 N.J. 335, 343

(1973)); see also Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington, 194 N.J. 223, 256 (2008).  To overcome the presumption of validity, the challenging party must demonstrate an ordinance's invalidity clearly and convincingly.  Cona v. Twp. of Washington, 456 N.J. Super. 197, 215 (App. Div. 2018).  If an ordinance is "debatable, it should be upheld."  Riggs v. Long Beach, 109 N.J. 601, 611 (1988).

In deciding a challenge to a zoning ordinance, a court considers the following "objective test for an ordinance's validity":

> First, the ordinance must advance one of the purposes of the [MLUL] as set forth in N.J.S.A. 40:55D-2. Second, the ordinance must be substantially consistent with the land use plan element and the housing plan element of the master plan or designed to effectuate such plan elements, unless the requirements of that statute are otherwise satisfied.  Third, the ordinance must comport with constitutional constraints on the zoning power, including those pertaining to due process, equal protection, and the prohibition against confiscation.  Fourth, the ordinance must be adopted in accordance with statutory and municipal procedural requirements.
>
> [Griepenburg, 220 N.J. at 253 (quoting Riggs, 109 N.J. at 611-12).]

Plaintiff appears to challenge the second and fourth prongs of that test.

As to the second prong, the MLUL mandates only substantial consistency, "not . . . absolute consistency," between a master plan and a zoning ordinance.

16

Myers v. Ocean City Zoning Bd., 439 N.J. Super. 96, 104 (App. Div. 2015). "[T]he concept of 'substantially consistent' permits some inconsistency, provided it does not substantially or materially undermine or distort the basic provisions and objectives of the Master Plan." Manalapan, 140 N.J. at 384. A "governing body's determination that its ordinance is substantially consistent is entitled to great weight and deference." Myers, 439 N.J. Super. at 104; see also Manalapan, 140 N.J. at 383.

As to the fourth prong, a governing body may adopt an amendment to a zoning ordinance that is inconsistent with the master plan "by affirmative vote of a majority of the full authorized membership of the governing body, with the reasons of the governing body for so acting set forth in a resolution and recorded in its minutes." Riya Finnegan LLC, 197 N.J. at 192 (quoting N.J.S.A. 40:55D-62(a)); Willoughby v. Planning Bd. of Twp. of Deptford, 326 N.J. Super. 158, 165 (App. Div. 1999) ("Inconsistency between a zoning amendment and the master plan is not fatal to a zoning amendment. It merely triggers two procedural requirements: a majority vote of the full authorized membership of the governing body and a statement of reasons."). However, the "owner of rezoned property has the right to challenge the adequacy of the reasons

expressed by the governing body for zoning it in a manner inconsistent with the [m]aster [p]lan." Riya Finnegan LLC, 197 N.J. at 193.

B.

We agree the ordinance furthers the goals of the Master Plan and is substantially consistent with it. Throughout its Master Plan, including in the Land Use Element and Housing Element sections, Princeton repeatedly describes itself as a community dedicated to offering a variety of housing to meet the needs of citizens from diverse socio-economic backgrounds and affirms again and again its commitment to the development of affordable housing. In their respective public meetings on the ordinance, the Planning Board and Council considered at length the comments made in favor of and against the adoption of the ordinance, including the arguments of plaintiff's attorney and planner regarding inconstancies in bulk standards and density. As the trial court found:

> [Township officials] wanted to make it the best possible development for affordable housing in Princeton. They did not ignore planning concerns.
>
> . . . .
>
> [T]he Council in its adoption of the resolution of the ordinance considered the inconsistencies in terms of the bulk standard, the density, the . . . height of the buildings.

A-4005-19

> And, nonetheless, determined that the need for affordable housing and a hundred percent affordable housing as done carefully as this ordinance was designed outweighed any of the inconsistencies that had been raised . . . .
>
> And so, . . . the benefit of . . . affordable housing and, also, attention . . . to planning principals. And, so, this isn't simply Princeton saying affordable housing, and we're shutting our eyes to everything else. It's Princeton saying we need affordable housing. We have limited vacant property. And we have a reputable developer that's come forward with, yes, it's a small site, but a small site that can be configured to make an attractive affordable housing development of [sixty-five] units. It's consistent with our commitment . . . to provide affordable housing and to do it in a way that benefits the community and anyone who's going to live in . . . this particular project.

We see no reason to set aside the "great weight and deference," Myers, 439 N.J. Super. at 104, owed to the Council's determination that the ordinance is substantially consistent with the Master Plan.

Accepting plaintiff's argument would require absolute — not substantial — consistency with a master plan and have the effect of treating initial zones and zoning determinations as if they were carved in stone. That the Fair Share Plan of 2008 "contain[ed] detailed plans for developing affordable house in the S-2 Zone" and that the property at issue was originally designated as being in an S-2 zone does not prevent Princeton from seeking and creating additional

opportunities for the construction of affordable housing.  Indeed, the Supreme Court in Mount Laurel II praised municipalities that had amended their zoning ordinances, as Princeton did here, to enable the development of affordable-housing units consistent with the constitutional mandate of Mount Laurel I.  Like the ordinance in Manalapan, 140 N.J. at 384, this ordinance does not so "undermine or distort the basic provisions and objectives of the Master Plan . . . ." to warrant its invalidation.

Plaintiff faults the Council and trial court for referencing the 2017 Reexamination Report.  We see no reversible error in the Council's and trial court's references to the 2017 Reexamination Report given the clear substantial consistency of the ordinance with the Master Plan.

C.

Having determined the ordinance was substantially consistent with the Master Plan, the Council did not need to go any further.  Nevertheless, following the suggestion of the Planning Board's attorney to "cover[] all bas[e]s," the Council chose to set forth in a resolution its reasons for adopting the ordinance pursuant to N.J.S.A. 40:55D-62(a).  We see no procedural infirmity with that additional though unnecessary step.

After conducting a public hearing in which it considered commentary regarding the ordinance, including the statements by plaintiff's planner, the Planning Board issued a review memorandum in which it stated its finding that the proposed ordinance was consistent with the Master Plan. It also referenced plaintiff's planner's analysis that the proposed ordinance conflicted "with other Master Plan goals and Land Use objectives" and statements "citing high density that is not compatible with the surrounding area," which was the clear focus of plaintiff's planner's presentation to the Board.

Plaintiff faults the Planning Board for referencing only the focus of plaintiff's planner's statements before the Board. But the Council clearly had an opportunity to consider every opinion plaintiff's planner had concerning any inconsistency when he testified during the Council's public hearing. Having heard all testimony, the Council ultimately concluded the proposed ordinance was substantially consistent with the Master Plan. Contrary to plaintiff's argument, the Council's conclusion does not demonstrate a failure to consider plaintiff's planner's opinions; it demonstrates the Council's disagreement with them.

In setting forth its reasons for adopting the ordinance in a resolution, the Council did not negate or muddy its determination that the ordinance was

substantially consistent with the Master Plan. It simply was taking a "belts and suspenders" approach in determining the validity of the ordinance, addressing both the "substantially consistent" and "inconsistent" provisions of N.J.S.A. 50:55D-62(a). Although we need not reach this issue having agreed the proposed ordinance was substantially consistent with the Master Plan, we also agree the Council adequately explained its reasons for adopting the ordinance pursuant to N.J.S.A. 40:55D-62(a).

D.

We likewise reject plaintiff's spot-zoning argument. Our Supreme Court has defined impermissible spot zoning as "the use of the zoning power to benefit particular private interests rather than the collective interests of the community." Taxpayers Ass'n of Weymouth Twp., Inc. v. Weymouth Twp., 80 N.J. 6, 18 (1976); see also Riya Finnegan LLC, 197 N.J. at 195.

In determining whether an ordinance constitutes impermissible spot zoning, courts ask "whether the particular provision of the zoning ordinance is made with the purpose or effect of furthering a comprehensive scheme or whether it is designed merely to relieve a lot or lots from the burden of a general regulation." Riya Finnegan LLC, 197 N.J. at 196 (quoting Palisades Props., Inc. v. Brunetti, 44 N.J. 117, 134 (1965)). Enacting an ordinance proposed by and

22

benefitting a private party is not impermissible spot zoning if it was enacted for the general welfare as part of a comprehensive plan. Weymouth Twp., 80 N.J. at 18; see also Gallo v. Mayor and Twp. Council, 328 N.J. Super. 117, 128 (App. Div. 2000) (rejecting argument that re-zoning a property to allow higher density for development by a private party was impermissible spot zoning given that it was consistent with a comprehensive plan to benefit the community and was not enacted to benefit only certain individuals).

As confirmed by the reasons set forth by the Council in its resolution, the Council adopted the ordinance not to benefit a private party but because it gave Princeton "the opportunity [to] create a substantial number of safe and attractive affordable housing units in an appropriate location and in furtherance of Princeton's constitutional obligation" and in a way that was "[c]onsistent with the land use element of the Master Plan and the 2017 Master Plan Reexamination Report." The ordinance enables Princeton to fulfill its goal, as set forth in the Land Use Element section of its Master Plan, "to maintain and enhance the diversity of residential options available in Princeton." That is not impermissible spot zoning.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4005-19