FRANK CHIPOLONE, SR., PROSECUTOR-RELATOR, v. MUNICIPAL COUNCIL OF THE CITY OF CLIFTON, RESPONDENT.

Argued May 5, 1948—Decided June 21, 1948.

Before CASE, CHIEF JUSTICE, and Justice BURLING.

For the prosecutor, *Heller & Laiks* (*Aaron Heller*).

For the respondent, *John G. Dluhy.*

The opinion of the court was delivered by

CASE, CHIEF JUSTICE. This is on a writ of *certiorari* to review the action of the Municipal Council of the City of Clifton in refusing a license, applied for in December of 1946, to Frank Chipolone, Sr., "to deal in waste paper" upon premises hereinafter mentioned. It is also the return of a rule to show cause why a peremptory or alternative writ of

*mandamus* should not be granted to command the issuing of the license—a precautionary measure meant to depend upon a decision of the *certiorari* proceedings in favor of the prosecutor.

The location for which the permit is asked is not precisely described in the application; it is designated by a map or sketch which is attached to the application and which is interpreted by the testimony and by prosecutor's brief as being 50 feet wide and 200 feet in depth running from East Clifton Avenue to Seger Street and as consisting of two lots numbered 71 and 73 East Clifton Avenue and two lots numbered 38 and 40 Seger Street.

On March 20th, 1928, the city passed a zoning ordinance which forbade the use of any building on premises in any of the residence zones or business zones for the storage or baling of scrap paper, rags or junk; such a use, subject to conditions, was permitted in industrial zones. The ordinance provided for the appointment of a zoning board and gave to that board authority over disputes concerning the application of the ordinance and over the granting of exceptions. The East Clifton Avenue frontage of prosecutor's property is in the business zone and the Seger Street frontage is in a residence zone. Therefore all parts of the property are zoned against the proposed use. No exception has been given or other action taken by the zoning board with respect to any portion of the property.

On November 17th, 1936, the city passed an ordinance to license and regulate junk shops and junk yards; the ordinance defined junk as any waste or discarded material and specifically included paper—the purchasing, selling, storing or dealing in the same; it forbade the operation of such a business without a license and required the applicant to file with the city clerk a written application stating, among other things, the name and residence of the applicant and the place where the business was to be conducted and further required the applicant to give notice to all property owners within 200 feet of the property at least five days prior to the time fixed for the hearing. The license was sought under that ordinance.

The notice served by prosecutor upon property owners with respect to his application stated that the premises were those at 71 and 73 East Clifton Avenue. It did not mention the Seger Avenue lots. At the hearing had on the application prosecutor asked that a stenographer hired by him for the purpose, be sworn and permitted to take the testimony stenographically. That was done, but prosecutor has not provided us with a transcript of the testimony. The proofs before us were all taken on rule of court after the writ was allowed.

The zoning ordinance prohibition is of itself a justification for the refusal of the permit unless, as prosecutor contends, the entire property for which the permit is sought carries a non-conforming use. Some uncertainty appears in the proofs because of the fact that, earlier and at different times, members of prosecutor's family and a corporation in which they were interested did conduct a waste paper business on one or another part of a larger tract which embraced the present property. The testimony of some witnesses is unconvincing because of the ensuing confusion. But whatever may be the fact as to a non-conforming use at and following the adoption of the zoning ordinance, we are persuaded, and find, that the property now in question was not put to a non-conforming use from 1936 to 1945. The property was originally owned by Nunzio Chipolone, father of the prosecutor. It was lost by him to the mortgagee, Clifton Building and Loan Association; and it was sold by that corporation to Celsey Pasqualin in 1936 and by Pasqualin to the prosecutor about 1945. Soon after the last mentioned conveyance prosecutor, without a license from the City Council and without an exception from the zoning board, began operating a waste paper business at that location. He was prodded by the authorities and then filed the application for a permit which was denied and is the subject of these proceedings.

Pasqualin, when he acquired the property, destroyed all the buildings formerly used for the waste paper business—a business which, although classed in the license ordinance as a junk business, nevertheless is conducted indoors and is quite different in its operation from the metal junk business.

The only buildings not removed or destroyed were the one family house at 71 and 73 East Clifton Avenue where prosecutor now resides and a two car garage at 42 Seger Street. Pasqualin testified that the property was not used for a waste paper business during the period of his ownership, and prosecutor himself testified that while he was never out of the waste paper business he did not conduct such a business at the present address after 1939 until he went in business there in 1945 as mentioned above. He further testified that in 1940 he started and is still operating a waste paper business on Van Houten Street. We accept the Pasqualin version and find from it and other supporting testimony that for a period approximating nine years, beginning in 1936, the property was not subjected to a non-conforming use and that if and to the extent that such a use had theretofore existed it was then abandoned. *R. S.* 40:55–48 provides that any non-conforming use existing at the time of the passage of an ordinance may be continued upon the lot or in the building so occupied; but the cases are uniform in assuming that an actual abandonment of the use is fatal to continued exemption from the application of a zoning ordinance prohibition. *Frank J. Durkin Lumber Co.* v. *Fitzsimmons,* 106 *N. J. L.* 183; *National Lumber Products Co.* v. *Ponzio,* 133 *Id.* 95; *Walton* v. *Stephens,* 124 *Id.* 216; *Campbell* v. *Board of Adjustment,* 118 *Id.* 116; *Provident Institution for Savings* v. *Castles,* 11 *N. J. Mis. R.* 773. The property passed into other hands, prosecutor moved away and set up his business elsewhere, the purchaser destroyed the sheds and outbuildings with no plan or effort to resume the business or to have it resumed, and no such business was conducted there for a period of about nine years. At the end of that time prosecutor purchased the property and under new conditions planned and attempted to re-establish the abandoned use. But if there had been an abandonment, and we hold that there had been, he could not thereby revive the legality of the use.

Consequently the denial of the license was lawful.

There were other circumstances, which appear in the proofs, adverse to the granting of the application. The neighborhood

had become one of houses and small businesses. Neighbors complained that the operation of such a business had resulted in an infestation of rats. There was a complaint of rubbish fires. It is said, without contradiction, that the proofs upon which the Council acted, but which are not put before us, contain testimony by the chief of the fire department that in his opinion the proposed business would constitute a fire hazard. The prosecutor is remiss in not printing a transcript of the official recording of the testimony upon which the disputed ruling was made. In view of our finding of illegality in the use we have not deemed it necessary to weigh these factors, but some of them are of the sort which may sway the decision of a municipal body on the application for a junk yard license. *Cf. Hammond* v. *Paterson,* 123 *N. J. L.* 553; *affirmed,* 125 *Id.* 627.

We conclude that the municipal action brought up by the writ of *certiorari* should be sustained. The occasion for considering the *mandamus* application does not arise.

The writ and the rule will be dismissed, with costs.