30 N.J. Super. 11 (1954)
103 A.2d 164
ANTHONY BARBARISI, ALFONSO MOSCHETTI, CARMELA LEPORE AND ROSE DE GISE, PLAINTIFFS-APPELLANTS,
v.
BOARD OF ADJUSTMENT, BOARD OF PUBLIC WORKS, WILLIAM BYRNES, INSPECTOR OF BUILDINGS, LESTER F. TITUS, MAYOR OF THE CITY OF PATERSON, AND JOSEPH VIGNALI, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 1, 1954.
Decided February 23, 1954.
*12 Before Judges EASTWOOD, JAYNE and FRANCIS.
*13 Mr. Salvatore D. Viviano argued the cause for the appellants.
Mr. Joseph J. De Luccia argued the cause for the respondents (Mr. James D. Ward, attorney for Board of Adjustment, Board of Public Works, Lester F. Titus, Mayor, and William Byrnes, Building Inspector of the City of Paterson) (Mr. Louis Nussman, of counsel with respondent Joseph Vignali.)
The opinion of the court was delivered by FRANCIS, J.A.D.
The board of adjustment of the City of Paterson recommended to the board of public works, the governing body of the city, that a variance be granted to respondent Joseph Vignali, from the zoning ordinance, to permit certain construction on property owned by him. The board of public works approved the recommendation and appellants attacked the resolution by this proceeding in lieu of certiorari. The Law Division sustained the action of the governing body and this appeal followed.
The recommendation for a variance was made under N.J.S.A. 40:55-39(d) which empowers the board of adjustment to:
"d. Recommend in particular cases and for special reasons to the governing body of the municipality the granting of a variance to allow a structure or use in a district restricted against such structure or use. Whereupon the governing body or board of public works may, by resolution, approve or disapprove such recommendation. If such recommendation shall be approved by the governing body or board of public works then the administrative officer in charge of granting permits shall forthwith issue a permit for such structure or use."
In defining the authority committed to the board by this enactment, the Supreme Court said:
"* * * The amendatory acts indicate a legislative intent to withdraw from R.S. 40:55-39d, N.J.S.A., the application of the the requirement for proof of `unnecessary hardship' and to substitute therefor discretionary authority to grant a variance `in particular *14 cases and for special reasons.' This is indicated by the fact that in subsection c (as amended) the Legislature retained the words `exceptional and undue hardship' where the board of adjustment is empowered to authorize a variance, but in subsection d (which formerly contained no legislative expression of the basis necessary for the board's recommendation of variance to the governing body) the Legislature inserted the words `in particular cases and for special reasons.' It is settled that statutes should be accorded that construction which will give effect to every word expressed by the Legislature therein. This requires construction of R.S. 40:55-39, as amended, N.J.S.A. supra, to mean that where the board of adjustment may authorize a variance there must be proof of `exceptional and undue hardship,' but where it may recommend a variance to the governing body of the municipality it may do so, in particular cases, `for special reasons' which may include, but do not necessarily require, proof of unnecessary hardship as a special reason warranting a variance." Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64, 77 (1952).
Thus, in order to recommend a variance to the governing body the board of adjustment must find: (1) "special reasons" which are not inconsistent with the basic purposes of zoning as set forth in R.S. 40:55-32, and (2) that the variance can be granted "Without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55-39; Ward v. Scott, 11 N.J. 117, 126 (1952).
In the present case Vignali acquired the property in 1935, through foreclosure of a mortgage which he held. It is known as 285-291 Fifth Avenue, Paterson, and is on the corner of 19th Street. The lot is 100 feet by 100 feet and located in the residence "C" district under the zoning ordinance.
Prior to and at the time of the adoption of the zoning ordinance, an automobile repair business was being conducted in the building on the premises. The parties concede that this was a valid non-conforming use.
Later in 1935, apparently at the time of the foreclosure, this use ceased and Vignali let the premises, except for a small portion thereof, for a rug-cleaning business. The small portion was rented to the Fifth Avenue Pleasure Club. *15 These uses continued until 1946 when once again a new tenant took possession and operated an automobile repair shop.
In January 1952 the building was so badly damaged by fire that Vignali considered it prudent to tear down what was left. He applied for a permit to rebuild but was refused. An appeal was taken to the board of adjustment for the purpose of establishing a non-conforming use but it was withdrawn without prejudice. Finally, the present proceeding was instituted seeking a variance to allow the construction of a cinder block and stucco garage which would be larger and lower than the old building. The application shows that the new structure would have a frontage of 94 feet and a depth of 94 feet 4 1/2 inches, with no setback line in the front of the lot and one of somewhat less than three feet from each sideline. Since the lot is 100 feet by 100 feet, use of almost its entire area was contemplated.
After a hearing at which a number of witnesses appeared, many of them being objectors who resided in the immediate neighborhood, the board decided to recommend granting of the requested variance. And in its resolution of recommendation the "special reasons" which prompted the action were set forth as required. Ward v. Scott, supra. They are:
"1. The variance applied for will not substantially impair the intent or the purpose of the Zoning Ordinance of the City of Paterson.
2. That the variance is not inimical to the safety, morale and good health of the residents in the affected area or the general welfare of the public.
3. That the site under consideration, before the passage of the Zoning Ordinance, and since its passage, has been continuously used for garages, later as a rug-cleaning establishment, and for the past seven years as an auto repair shop, and to refuse to favorably recommend this variance, would be an unnecessary hardship upon the present owner.
4. There was considerable testimony for and against the appellant as to the manner in which the auto repair shop was conducted prior to its recent destruction by fire. The Members of the Board have concluded that the weight of the evidence favors the conclusion that the auto repair shop was not the nuisance which the objectors would have the Board believe. The waiver filed by St. Luke's Evangelical Lutheran Church, whose property is within a radius of 60 feet of *16 appellant's property, does not support the statements described by the objecting witnesses, who are further contradicted by many residents in the area."
It will be observed that paragraphs 1 and 2 are general factual conclusions without reference to specific facts. Paragraphs 3 and 4 therefore presumably represent the facts which form the foundation for the resolution. Epitomized, these paragraphs say that the special reasons arise from the previous use and the fact that the new building and business to be maintained therein will not constitute a nuisance.
Although the record does not contain the specific language of the zoning ordinance with respect to residence "C" zone, it is undisputed that the use is restricted to one- and two-family and multiple dwelling houses and that the proposed business use is banned. The evidence discloses that within a radius of 200 feet from the lot in question there are no business structures, the use being confined to one- and two-family dwellings except for a church located across the street and about 60 feet away. The new one-family house of appellant Barbarisi is immediately to the rear of one corner of Vignali's property. Across the street on East 19th Street the whole block consists of two-family houses. A block away, on 6th Avenue and on 19th Street, there are properties being used for business purposes. However, no proof was offered to show that they are in the residence "C" zone.
It is conceded that there is nothing unusual about Vignali's lot to distinguish it from any other in the area. There are vacant lots across the street within the immediate block and all of them are owned by the tenant, William O. Taylor, who has been operating the repair shop involved and who will operate the new garage if the variance is sustained.
Vignali said he had not given consideration to building dwelling houses of any kind there because he did not have the money, although the garage required an investment of $28,000. If he had the money he would do so. And his counsel stipulated that it would be more profitable to construct and rent the garage.
*17 The original use of these premises as an auto repair shop was a valid non-conforming one. When that operation terminated and the rug-cleaning business was established, the use was an invalid, non-conforming one. In fact, although the operation continued for several years, no certificate of occupancy was ever obtained. Either the municipal authorities did not receive notice of the violation of its ordinance or they chose to ignore it. The re-establishment of the auto repair shop through the tenancy of Taylor did not alter the legal situation. Once the original non-conforming use had been abandoned it could not be revived. Chipolone v. Municipal Council of City of Clifton, 137 N.J.L. 307 (Sup. Ct. 1948), affirmed 1 N.J. 93 (1948).
Even if it could be said that the original use had been revived, the destruction of the building by fire put an end to that use. R.S. 40:55-48 permits restoration or repair thereof only in the event of partial destruction. Cf. D'Agostino v. Jaguar Realty Co., 22 N.J. Super. 74, 77 (Ch. Div. 1952). And the ordinance here provides that no structural alterations shall be made to a non-conforming use in excess of 50% of the assessed value of the building.
It is plain from the resolution of the board of adjustment and from the additional findings which appear in the resolution of the board of public works that both the recommendation for a variance and the approval thereof were motivated by the pre-existing non-conforming use and the subsequent extended period of illegal use without interference by the authorities.
A policy on the part of a governing body which would ignore or permit a use of land condemned by the zoning ordinance and sanction a variance because an undue hardship might flow from the termination of the illegal use, would constitute discrimination against other property owners in the particular zone and tend to destroy zoning as an instrument of orderly municipal development.
It is the policy of the law to restrict closely uses which do not accord with the zoning ordinance. Adler v. Department of Parks, Irvington Township, 20 N.J. Super. *18 240 (App. Div. 1952); Home Fuel Oil Co. v. Board of Adjustment of Borough of Glen Rock, 5 N.J. Super. 63 (App. Div. 1949); Home Fuel Oil Co. v. Borough of Glen Rock, 118 N.J.L. 340 (Sup. Ct. 1937); De Vito v. Pearsall, 115 N.J.L. 323 (Sup. Ct. 1935). Such uses represent conditions which should be reduced to conformity as speedily as is compatible with justice. Borough of Rockleigh, Bergen County, v. Astral Industries, 29 N.J. Super. 154 (App. Div. 1953).
The fact that a non-conforming use would be more profitable cannot be considered such a special reason as is contemplated by the statute. Berdan v. City of Paterson, 1 N.J. 199 (Sup. Ct. 1948). Equally without force are the suggestions that the owner can afford an illegal use but not a conforming one, and that the new structure or new use will be no more harmful than the old one to the adjacent land owners. Monmouth Lumber Co. v. Ocean Township, supra, 9 N.J., at page 78. Moreover, it cannot be overlooked that Taylor, the prospective tenant of the new garage, is the owner of the undeveloped lots across the street. So the granting of the variance "may well be the opening wedge to the destruction of the residential character" of the entire residence "C" district. Cf. Tzeses v. Board of Trustees of Village of South Orange, 22 N.J. Super. 45, 61 (App. Div. 1952), certiorari denied Rush v. Board of Adjustment of Village of South Orange, 11 N.J. 327 (1953).
Under the circumstances neither the resolution of the board of adjustment nor the more elaborate one of the board of public works discloses any such special reasons within the contemplation of the statute as would justify the recommendation of or the granting of a variance. Ward v. Scott, supra, page 126.
The judgment is reversed.