971 A.2d 466 (2008)
407 N.J. Super. 432
Eltrym EUNEVA, LLC, Plaintiff,
v.
KEANSBURG PLANNING BOARD OF ADJUSTMENT and Borough of Keansburg, Defendants.
Docket Number: L-947-08
Superior Court of New Jersey, Law Division, Monmouth County.
Approved for Publication May 26, 2009.
Decided November 5, 2008.
*468 Hussam Chater for plaintiff (Ansell, Zaro, Grimm & Aaron, Ocean, P.C., attorneys).
James J. Kinneally, New Brunswick, for defendant, Planning Board of Adjustment (Hoagland, Longo, Moran, Dunst & Doukas LLP, attorneys).
Keri L. Fornino for defendant, Borough of Keansburg (Dilworth Paxson LLP, attorneys).
LAWSON, A.J.S.C.
This is an action in lieu of prerogative writs wherein plaintiff Eltrym Euneva, LLC (Euneva) is challenging the Planning Board of Adjustment for the Borough of Keansburg's (Board) decision to deny Euneva's appeal of Robert Burlew, the Borough's construction official/zoning officer's, decision that Euneva's property could not be used for multi-family residential purposes. Euneva asserts that the Board's decision was arbitrary, capricious, and unreasonable. Euneva specifically argues that the documents supplied by the Borough presented sufficient evidence that the subject property is a pre-existing, nonconforming *469 multi-family use, and the record before the Board precludes a finding that the multi-family use was abandoned. Finally, Euneva argues that the Borough is equitably estopped from denying it the right to use the subject property as a preexisting, non-conforming multifamily use.
The Board counters that its findings deserve deference because its decision was based on sufficient evidence, and that Euneva failed to meet its burden to prove that the subject property is a pre-existing, non-conforming use. The Borough avers that the documents and statements from Borough officials are not compelling enough to warrant invoking the doctrine of equitable estoppel against the Borough as a government entity.
The court has reviewed the trial briefs and record below, engaged in colloquy with counsel, and accordingly enters the following findings of fact and conclusions of law pursuant to Rule 1:7-4.

I. STATEMENT OF FACTS
[Portion redacted for publication purposes.]

II. APPLICABLE LAW

A. Standard of Review
[Portion redacted for publication purposes.]

B. Proof of a Pre-existing Non-Conforming Use
The central question before this court is whether the Board's resolution was arbitrary, capricious, or unreasonable in finding Euneva failed to prove the subject property was lawfully used for multi-family residential purposes prior to Keansburg adopting an ordinance making the multi-family residential use non-conforming.
A non-conforming use is defined in the Municipal Land Use Law ("MLUL") as "a use or activity which was lawful prior to adoption, revision or amendment of a zoning ordinance, but which fails to conform to the requirements of the zoning district in which it is located, by reasons of such adoption, revision or amendment." N.J.S.A 40:55D-5. It is well-settled that non-conforming uses are frowned upon and are inconsistent with the spirit and purpose of zoning. Borough of Rockleigh v. Astral Indus., 29 N.J.Super. 154, 160, 102 A.2d 84 (App.Div.1953). Furthermore, it "is the policy of the law to restrict uses which do not accord with the zoning ordinance[.]" Id. at 160, 102 A.2d 84. However, it is also well-settled that non-conforming uses or structures existing at the time of passage of an ordinance may be continued. Kessler v. Bowker, 174 N.J.Super. 478, 484, 417 A.2d 34 (App.Div.1979).
The party seeking to continue the non-conforming use bears the burden of proving the nature of the use's character at the time the ordinance was adopted making it non-conforming. N.J.S.A. 40:55D-68; S&S Auto Sales, Inc. v. Zoning Bd. of Adj. of Stratford, 373 N.J.Super. 603, 624, 862 A.2d 1204 (App.Div. 2004); Bonaventure Intl., Inc. v. Borough of Spring Lake, 350 N.J.Super. 420, 432, 795 A.2d 895 (App.Div.2002); Ferraro v. Zoning Bd. of Keansburg, 321 N.J.Super. 288, 290, 728 A.2d 863 (App.Div.1999). Nevertheless, a zoning board may only reject an application to certify a use as nonconforming if the application lacks substantial evidence. Kramer v. Bd. of Adjustment, 45 N.J. 268, 296, 212 A.2d 153 (1965). As such, an applicant must prove more than a "mere intention" to establish a use. Paruszewski v. Twp. of Elsinboro, 297 N.J.Super. 531, 537, 688 A.2d 662 (App.Div.1997) (citing Morris County Land Improv. Co. v. Parsippany-Troy *470 Hills, 40 N.J. 539, 549, 193 A.2d 232 (1963)).
The Board argues that Euneva failed to present proof that the property was used as a multi-family residence before the ordinance was enacted. Euneva's certificates, provided by the Borough and presented by Euneva as Exhibit A, document both the type of use and that the multi-family use existed over at least a three-year span. The first relevant document presented to the Board is the 1986 certificate of housing inspection. This document pre-dates the adoption of the current zoning ordinance, and establishes the multi-family residential use by identifying the specific property as "16 Jahn St. down." Additionally, applications and certificates for "14A Jahn Street" and "14B Jahn Street up," both located in the same building on the same property, from different time periods in 1989 demonstrate the continued use of the properties located at Block 57, Lot 14 as constituting a multi-family residential use.
In addition to the applications and certificates provided to Euneva by Keansburg, Euneva presented a 1989 tax assessment card. This card identified the property as containing one two-story structure located near the front of the property, and a one-and-a-half story structure located near the rear of the property. Additionally, the structures were designated as "Residence Class 45," which indicated the structures were recognized by Keansburg as being used for multi-family residential purposes. Finally, Euneva expert Haney testified that the tax assessment cards showed the two structures had been built as multi-family residences more than sixty-five years before 1989.
This evidence is clearly contrary to the Board's resolution denying Euneva's application. Board findings numbered eight and nine state that Euneva failed to present any testimony or evidence of the property's use before the 1989 zoning ordinance was enacted. Board finding number ten denied Euneva's requested relief because Euneva failed to present enough evidence of the use of the property as a multi-family use before the property was rezoned. Although one single certificate or tax assessment card may be insufficient to establish a pattern of use, the documents in toto comprise a historical snapshot of the property's use.
The Board also argues that Euneva failed to present phone listings, utility bills, or leases to prove its case. While a board may be able to decide the true facts of each application, a board acts unreasonably when it refuses to acknowledge documents created and maintained by its municipality. Furthermore, the documents Euneva presented are analogous to the documents referenced by the Board in its brief. Euneva's documents may even be considered more trustworthy than those listed by the Board because they came from the municipality, and not from a private business. Thus, the Board was arbitrary, capricious, and unreasonable in denying Euneva's application to establish that Euneva's properties at 14 and 16 Jahn Street qualified as a pre-existing non-conforming use. As such, the Board's denial must be reversed.

C. Abandonment of Pre-existing Non-Conforming Use
Although the abandonment issue was not considered by the Board when it heard Euneva's appeal, Borough of Belmar v. 201 16th Ave., Belmar, 309 N.J.Super. 663, 674-75, 707 A.2d 1106 (Law Div.1997) and Rule 1:7-4 support this court's conclusion that the court is vested with the power to find, as a matter of law, that Euneva's pre-existing, non-conforming use is *471 not abandoned based on the facts presented to the Board on the record below.
In 201 16th Ave., Judge McGann found, based on the facts presented to him in trial briefs and at oral argument, that a pre-existing, non-conforming use had been abandoned. The board of adjustment was not involved in that case, and the only parties who raised the abandonment argument were two private banks and Belmar. That case informs us that:
Abandonment is a matter of intent. Intent is an issue of fact. That is the test this court used in finding abandonment of the nonconforming use. Abandonment of a nonconforming use arises from an intentional act or failure to act on the part of the owner. The intent must be proved to the satisfaction of the trier of fact and by a preponderance of the evidence from all of the circumstances presented in the evidence.
[201 16th Ave., supra, 309 N.J.Super. at 674, 707 A.2d 1106 (citations omitted).]
In actions in lieu of prerogative writ, the judge acts as the fact-finder in a trial de novo. As noted by the Appellate Division, "[i]n a non jury civil action, the role of the trial court at the conclusion of the trial is to find the facts and state conclusions of law. R. 1:7-4. Failure to perform that duty `constitutes a disservice to the litigants, the attorneys and the appellate court.'" Anastasio v. Planning Bd. of W. Orange, 209 N.J.Super. 499, 515-516, 507 A.2d 1194 (App.Div.1986) (citing Kenwood Assoc. v. Bd. of Adj. of Englewood, 141 N.J.Super. 1, 4, 357 A.2d 55 (App.Div. 1976)). Thus, this court is limited to making its findings of fact based on the record below, but can now make conclusions of law drawn from the facts on the record. Upon examining the record below, and the arguments made in the trial briefs, sufficient evidence exists for this court to find as a matter of law that the pre-existing, nonconforming multi-family use was not abandoned.
Although non-conforming uses are permitted to exist, their existence is predicated upon the continued maintenance of the non-conforming use. In other words, "the right of an owner to continue to exercise a nonconforming use is `a property right, a part of land title, that could only be extinguished by acts or omissions indicating an intention to abandon it.'" Scavone v. Borough of Totowa, 49 N.J.Super. 423, 428, 140 A.2d 238 (App.Div.1958) (citing State v. Casper, 5 N.J.Super. 150, 68 A.2d 545 (App.Div.1949)). Thus, if "a use is abandoned or terminated, it is no more." 201 16th Ave., supra, 309 N.J.Super. at 671, 707 A.2d 1106. Moreover, this court looks to Borough of Saddle River v. Bobinski, where the court held:
It has frequently been stated that abandonment of a nonconforming use depends upon the concurrence of two factors; one, an intention to abandon; and two, some overt act, or some failure to act, which carries a sufficient implication that the owner neither claims nor retains any interest in the subject matter of abandonment.
[108 N.J.Super. 6, 16, 259 A.2d 727 (Ch. Div.1969) (citing 2 Yokley, Zoning Law Practice (3rd ed.1965) s. 16-13 at 273-274).]
In Chipolone v. Municipal Council of Clifton, 137 N.J.L. 307, 59 A.2d 815 (1948), a waste paper business was operated on a tract but the property was foreclosed and sold in due course to an owner who tore down all of the buildings that had been used for such business and left only a single family residence thereon, and then the property passed back to the former owner. The physical removal of the buildings which had been used in the waste paper business indicated the owner's intent *472 to abandon the commercial use. See Cox, New Jersey Zoning and Land Use Administration, § 11-3 at 279 (2007).
Courts have also found that a change in circumstances can negate an expressed intent to continue a non-conforming use. See e.g. Town of Belleville v. Parrillo's, Inc., 83 N.J. 309, 316, 416 A.2d 388 (1980) (change in use from restaurant to discotheque terminated non-conforming use); Villari v. Zoning Bd. Of Adj. of Deptford, 277 N.J.Super. 130, 136-37, 649 A.2d 98 (App.Div.1994) (change in use for at least seven years from raising pigs to growing crops, during which fence needed for raising pigs was not maintained terminated a non-conforming use). Such circumstances must be qualitatively weighed to determine whether the owner has met his or her burden of establishing a continuing and definite intention to, continue the use.
The Board cites 201 16th Ave., supra, 309 N.J.Super. at 663, 707 A.2d 1106, for the proposition that a non-conforming use is abandoned with the passage of time. However, the 201 16th Ave. case and its facts are not analogous to the case at hand. In 201 16th Ave., a non-conforming rooming house was owned by Mr. Hargadon, who purchased it with financing from a bank. Mr. Hargadon ceased operating the rooming house after owning it for two years, defaulted on the mortgage, and subsequently filed for bankruptcy. Judge McGann stated that "abandonment of a non-conforming use arises from an intentional act or failure to act on the part of the owner. The intent to abandon a nonconforming use must be proved to the satisfaction of the trier of fact and by a preponderance of the evidence from all of the circumstances presented in the evidence." Id. at 674, 707 A.2d 1106. Judge McGann noted that Hargadon's three acts displayed the requisite intent and overt act to "certainly abandon[] any interest of his on the property." Id. at 669, 707 A.2d 1106. However, the facts displayed in the briefs and the record below do not reach the magnitude of those Judge McGann analyzed to find an abandonment in the 201 16th Ave. case.
This court is of the same mind as Judge McGann in 201 16th Ave., with regards to what constitutes abandonment. In that case, the owner ceased to use the property in a non-conforming manner, defaulted on the mortgage, and later filed for bankruptcy. These three acts constituted an affirmative dispossession of the boarding house in that case. In the matter sub judice, the 14 and 16 Jahn Street properties had been used as two-family homes prior to the zoning change, and at some later point the property was sold to Euneva through a tax lien foreclosure. However, there is no evidence that the previous owner took an affirmative step to file for bankruptcy which would thereby discard any future claims to the property and the nonconforming use.
Notably, Euneva postponed certain renovations until after the ninety day grace period had elapsed to ensure the prior owner did not attempt to reclaim the property. The ability to reclaim the property differentiates this case from 201 16th Ave. because filing for bankruptcy and divesting assets is an affirmative act which is different from passively allowing title to pass to another party through a tax lien sale. Filing for bankruptcy is an overt act which displays an intent to terminate ownership of a property, while failing to pay taxes on a property only indicates an inability to raise the funds necessary to cover the cost of taxes. Failing to pay taxes alone does not express the required intent to abandon a non-conforming use.
The Board did not consider any facts related to the abandonment of the preexisting, *473 non-conforming use of the property. The evidence presented by Euneva to the Board established that neither Euneva nor the previous owner had the intent to abandon any pre-existing, non-conforming use, and neither showed an overt act to abandon the use. Each structure was still metered for separate water and sewer, and the United States Postal Service recognized each of the four units as unique individual deliveries. Also, each unit contained its own separate bathroom, kitchen, and living area, and maintained a separate entrance. The proofs presented to the Board established that the structures were used as multi-family residences prior to the adoption of the current zoning ordinance, and no intent or overt act was displayed which terminated the use to define it as abandoned.
Accordingly, this court holds that Euneva's property was not abandoned. Consequently, 14 and 16 Jahn Street can each be referred to as a legal pre-existing, nonconforming two-family residence.

D. Estoppel Issue
The final issue before the court is whether the Board and Borough are estopped from denying Euneva the right to a multi-family residence use based on statements and documents presented to Euneva before they purchased the subject property. This court has determined that Euneva's property constitutes a pre-existing, non-conforming use based on the historical use evidence, and that the use has not been abandoned. However, the court finds Euneva relied to its detriment on statements and documents made by the Borough's officials identifying the two structures as legal multi-family residences.
A plaintiff must rely in good faith on a defendant's statements or actions before estoppel will be employed. Grasso v. Borough of Spring Lake Heights, 375 N.J.Super. 41, 47, 866 A.2d 988 (App.Div.2004) (citing Bonaventure Int'l., supra, 350 N.J.Super. at 436, 795 A.2d 895). Although equitable estoppel is rarely invoked against a municipality, it may be enforced if a landowner makes "substantial expenditures in good faith reliance on a permit that was issued because of a municipal official's erroneous, but at least debatable, interpretation of a zoning ordinance." Grasso, supra, 375 N.J.Super. at 48, 866 A.2d 988 (citing Irvin v. Twp. of Neptune, 305 N.J.Super. 652, 657, 702 A.2d 1388 (App.Div.1997)).
The Borough first argues that Euneva's reliance on the tax records and certificates of occupancy was not reasonable. However, these types of documents are among the many types an applicant would rely on to establish a pre-existing, non-conforming use. The question in this case is not whether an official wrongly issued a certificate, but whether the documents maintained by the Borough and its officials, which Euneva repeatedly relied upon, can be categorized as presumptively incorrect to thwart reliance on their accuracy. Unlike the Grasso plaintiffs, Euneva did not err by miscalculating a mathematical formula. Rather, Euneva researched the historical use of the subject property through the Borough's records and the advice of its officials. Only after thoroughly researching the matter did Euneva move forward with both the purchase and repairs of the subject property.
The Borough further argues that Euneva cannot rely on the permits issued post-purchase of the subject property based on the holding in Township of Mahwah v. Landscaping Technologies, Inc., 230 N.J.Super. 106, 110-11, 552 A.2d 1021 (App.Div.1989). In Township of Mahwah, a plaintiff obtained a prepurchase certificate of occupancy from the construction official identifying certain property as being *474 a legal preexisting, non-conforming use. However, the official later learned that the use had been expanded and required approval from the board of adjustment. The plaintiff filed an action, and on appeal the Appellate Division held that estoppel will not be imposed against a municipality when an individual relies on an official act outside the ambit of his authority. Id. at 110-11, 552 A.2d 1021.
The Borough's argument would be on firm ground if the Borough's officials acted outside their authority, and the Borough had not been so actively involved with the purchase of the subject property from the beginning. However, the totality of the circumstances here compound the harm caused to Euneva. The Borough's officials were involved in this matter from the time Euneva began researching the property's history, until the renovations, were nearly complete. Euneva relied on the Borough's documents, as interpreted by its officials, when deciding to purchase the property, and sought multiple permits requiring Borough inspections during the renovation process. The Borough's inspectors even complimented Mr. Reagor by stating how impressed they were with the improvements.
The situation presented by Euneva is also unlike that in the Grasso case. In Grasso, the plaintiffs argued that the municipality's officials were responsible to independently review the plaintiffs' plans, and the municipality's failure to do so barred them from compelling the plaintiffs to remove the offending house. The court held that plaintiffs' argument failed because they provided the municipality with incorrect information upon which to base a decision. Grasso, supra, 375 N.J.Super. at 46-7, 866 A.2d 988.
Here, however, Euneva informed the Borough officials why it was seeking information on the legal use of the existing structures, and the officials provided documents and statements identifying the legal status of the two structures in Borough records. The Borough should not be able to step in now at the final stages of the renovation to bar the requested use after observing and approving Euneva's work-to-date. Such actions would not be allowed in the private sector, and would work an injustice if permitted now. See Trenkamp v. Burlington, 170 N.J.Super. 251, 270-72, 406 A.2d 218 (Law Div.1979) (finding parties who "sleep on their rights" are barred from later attacking another party's actions). Thus, the Borough is estopped from denying Euneva the right to use the subject property as a pre-existing, non-conforming multi-family residence.

III. CONCLUSION:
This court finds that the Board's decision to deny Euneva's appeal from the Borough's construction official/zoning officer's letter advising Euneva that its properties could not be used for multi-family purposes was arbitrary, capricious, and unreasonable. Euneva supplied documents from the Borough which established a history sufficient to show that the subject property is a preexisting, non-conforming multi-family use. The Board's arbitrary and capricious actions are highlighted by its wholesale rejection of documents created and maintained by the Borough which identified the subject property's use during the requisite time period.
Further, the record before the Board precludes a finding that the multi-family use was abandoned because no evidence was proffered showing the intent and overt act required to abandon the property's use. Finally, the totality of the circumstances surrounding Euneva's purchase and renovation of the subject property presents compelling Circumstances persuading this court to apply the doctrine of *475 equitable estoppel, and permitting Euneva to use the subject property as a pre-existing, non-conforming multi-family use. Based upon the aforementioned reasons, the resolution of the Borough of Keansburg Planning Board of Adjustment is reversed.