**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0264-17T1
                 A-0339-17T1

ST. PAUL'S OUTREACH, INC.,

      Plaintiff-Respondent,

v.

BOARD OF ADJUSTMENT OF
THE TOWNSHIP OF SOUTH
ORANGE VILLAGE and THE
TOWNSHIP OF SOUTH ORANGE
VILLAGE,

      Defendants-Appellants.

_____

Argued November 13, 2018 – Decided January 28, 2019

Before Judges Gooden Brown and Rose.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-1183-16.

Patrick J. Dwyer argued the cause for appellant Board of Adjustment of the Township of South Orange Village (Nusbaum, Stein, Goldstein, Bronstein & Kron, attorneys; Patrick J. Dwyer, on the briefs).

Michael J. Martelo argued the cause for appellant Township of South Orange Village (Post, Polak, Goodsell & Strauchler, PA, attorneys; Steven C. Rother, of counsel; Michael J. Martelo, on the briefs).

Elaine S. Berkenwald argued the cause for respondent (Lavin & Associates, PC, attorneys; Elaine S. Berkenwald, on the briefs).

PER CURIAM

These two appeals, calendared back-to-back and consolidated for purposes of our opinion, arise out of an action in lieu of prerogative writs filed by plaintiff St. Paul's Outreach, Inc. against defendants Board of Adjustment of the Township of South Orange Village (Board) and the Township of South Orange Village (Township). The Law Division nullified the Board's denial of a conditional use variance that plaintiff sought for its residential property pursuant to N.J.S.A. 40:55D-70(d)(3) (d(3) variance). Having concluded plaintiff's presentation to the Board was incomplete and thereby prevented the Board from properly considering the imposition of reasonable conditions to grant the variance, we vacate the Law Division's order and remand to the Board for a limited rehearing.

I.

Because we conclude the trial court erred in its analysis, we commence our review with a discussion of the relevant legal principles to give context to the trial court's decision and the Board's denial of plaintiff's application.

"Our standard of review for the grant or denial of a variance is the same as that applied by the Law Division." Advance at Branchburg II, LLC v. Branchburg Twp. Bd. of Adjustment, 433 N.J. Super. 247, 252 (App. Div. 2013). Specifically, "when a party challenges a zoning board's decision through an action in lieu of prerogative writs, the zoning board's decision is entitled to deference." Kane Props., LLC v. City of Hoboken, 214 N.J. 199, 229 (2013). We grant zoning boards "wide latitude in the exercise of delegated discretion" due to "their peculiar knowledge of local conditions[.]" Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (quoting Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965)); see also Sica v. Bd. of Adjustment of Wall, 127 N.J. 152, 167 (1992).

Accordingly, we presume a board's factual determinations to be valid, and we will only reverse if its decision is arbitrary, capricious, or unreasonable. Kane Props., 214 N.J. at 229. That decision must be made on the basis of the record before the board, Kramer, 45 N.J. at 289, and "not on the basis of a trial

de novo, by affidavit or otherwise, before the Law Division." Antonelli v. Planning Bd. of Waldwick, 79 N.J. Super. 433, 441 (App. Div. 1963). Matters outside the record of proceedings before the board may not be considered by the court. See Adams v. DelMonte, 309 N.J. Super. 572, 583 (App. Div. 1998).

The scope of judicial review is limited "to determin[ing] whether the board could reasonably have reached its decision." Davis Enters. v. Karpf, 105 N.J. 476, 485 (1987). Therefore, a court generally "will not substitute its judgment for that of a board 'even when it is doubtful about the wisdom of the action.'" Cell South of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Twp., 172 N.J. 75, 81 (2002); see also Smart SMR of N.Y., Inc. v. Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998). "[C]ourts ordinarily should not disturb the discretionary decisions of local boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law." Lang v. Zoning Bd. of Adjustment of N. Caldwell, 160 N.J. 41, 58-59 (1999). The Board's conclusions of law, however, are subject to de novo review. Nuckel v. Borough of Little Ferry Planning Bd., 208 N.J. 95, 102 (2011).

The burden is on the challenging party to demonstrate that the board's decision was arbitrary, capricious or unreasonable. New Brunswick Cellular

Tel. Co. v. Borough of S. Plainfield Bd. of Adjustment, 160 N.J. 1, 14 (1999). We give even greater deference to a planning board's decision to deny a variance. Nextel of N.Y., Inc. v. Borough of Englewood Cliffs Bd. of Adjustment, 361 N.J. Super. 22, 38 (App. Div. 2003) (citing Northeast Towers, Inc. v. Zoning Bd. of Adjustment of W. Paterson, 327 N.J. Super. 476, 494 (App. Div. 2000)); Med. Ctr. at Princeton v. Twp. of Princeton Zoning Bd. of Adjustment, 343 N.J. Super. 177, 199 (App. Div. 2001). "That heavier burden requires the proponent of the denied variance to prove that the evidence before the board was 'overwhelmingly in favor of the applicant.'" Nextel, 361 N.J. Super. at 38 (quoting Northeast Towers, 327 N.J. Super. at 494).

Pertinent to this appeal, the basic principles governing a conditional use variance are set forth in N.J.S.A. 40:55D-70(d), which grants a board of adjustment the power to "[i]n particular cases for special reasons, grant a variance to allow departure from [zoning] regulations . . . to permit: . . . (3) deviation from a specification or standard . . . pertaining solely to a conditional use." As our Supreme Court observed in Coventry Square, Inc. v. Westwood Zoning Board of Adjustment, 138 N.J. 285, 287 (1994), "A variance for a deviation from a condition allows the applicant to engage in a conditional use

despite the applicant's failure to meet one or more of the conditions: It is not the use but the non-compliance with the conditions that violates the ordinance."

However,

> No variance or other relief may be granted . . . including a variance or other relief involving an inherently beneficial use, without a showing that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.
>
> [N.J.S.A. 40:55D-70(d).]

These statutory provisions embody what are routinely referred to as the positive and negative criteria that must be shown by an applicant to secure a use variance. Smart SMR, 152 N.J. at 323; Scholastic Bus Co. v. Zoning Bd. of Fair Lawn, 326 N.J. Super. 49, 56 (App. Div. 1999).

As explained by the Court in Sica:

> The statute requires proof of both positive and negative criteria. Under the positive criteria, the applicant must establish "special reasons" for the grant of the variance. The negative criteria require proof that the variance "can be granted without substantial detriment to the public good" and that it "will not substantially impair the intent and the purpose of the zone plan and zoning ordinance."
>
> [127 N.J. at 156.]

6

Where, as defendants acknowledge here, the proposed use is inherently beneficial or "serves the public good," the positive criteria element is satisfied. Saddle Brook Realty v. Twp. of Saddle Brook Zoning Bd. of Adjustment, 388 N.J. Super. 67, 76 (App. Div. 2006); House of Fire Christian Church v. Zoning Bd. of Adjustment of Clifton, 379 N.J. Super. 526, 535 (App. Div. 2005) (recognizing use of a church or house of worship "is an inherently beneficial use of the land"). "[A]s an 'inherently beneficial' use, the burden of proof of an applicant for a use variance is 'significantly lessened' with respect to both the positive and negative criteria." Salt & Light Co. v. Willingboro Twp. Zoning Bd. of Adjustments, 423 N.J. Super. 282, 287 (App. Div. 2011) (quoting Smart SMR, 152 N.J. at 323). An inherently beneficial use is presumed to satisfy the positive criteria, and it need not satisfy an "enhanced quality of proof" for the negative criteria, as set forth in Medici v. BPR Co., 107 N.J. 1, 21-24 (1987). Salt & Light Co., 423 N.J. Super. at 287; see also TSI E. Brunswick, LLC v. Zoning Board of Adjustment of E. Brunswick, 215 N.J. 26, 43 (2013) (relaxing the standard of proof for the negative criteria in an application for a conditional use variance).

Despite the less demanding standard of proof, a proposed variance for an inherently beneficial use is not automatically granted. Sica, 127 N.J. at 165-66.

A-0264-17T1

In Sica, the Court outlined the evaluative process to determine whether the proposed inherently beneficial use satisfies the negative criteria:

> First, the board should identify the public interest at stake.
>
> Second, the [b]oard should identify the detrimental effect that will ensue from the grant of the variance.
>
> Third, in some situations, the local board may reduce the detrimental effect by imposing reasonable conditions on the use.
>
> Fourth, the [b]oard should then weigh the positive and negative criteria and determine whether, on balance, the grant of the variance would cause a substantial detriment to the public good.
>
> [Ibid.]

"This balancing, '[w]hile properly making it more difficult for municipalities to exclude inherently beneficial uses . . . permits such exclusion when the negative impact of the use is significant.'" Id. at 166 (alterations in original) (quoting Baptist Home of S. Jersey v. Borough of Riverton, 201 N.J. Super. 226, 247 (Law Div. 1984)).

A-0264-17T1

II.

Applying those legal standards here, we turn to the pertinent facts presented to the Board.

Plaintiff is a national organization affiliated with the Roman Catholic Church. In September 2014, plaintiff purchased property known as lot 12, block 601 on the Township's tax map. The property is located in the Township's RA-60 residential zoning district, which permits single-family homes, public buildings and public schools. Places of worship are permitted conditional uses within the district. The neighborhood is characterized as "historic."

The subject property is an irregularly-shaped lot, slightly more than one acre in size, and is surrounded by twenty-two[1] single-family homes. A two-story dwelling is situated in the center of the lot. The dwelling contains fourteen bedrooms and a twenty-four seat chapel. Plaintiff's immediate predecessor, Salesian Society, Inc. (Salesian), added the chapel and ten bedrooms in November 1991. Salesian, a vocational organization affiliated with the Roman Catholic Church, used the property for worship, formation and occasional

---

[1] The record is unclear regarding the exact number of homes surrounding the subject property. In its merits brief and resolution, the Board states there are twenty-two surrounding homes, whereas the Township's merits brief indicates there are nineteen surrounding homes. Plaintiff's brief does not mention the number of surrounding homes.

 A-0264-17T1

weekend retreats. During the early 1990s, approximately ten seminarians lived at the property, but at the time plaintiff purchased the lot in 2014 only a few priests were in residence.

The dwelling's side and rear setbacks do not conform to the Township's requirements for a conditional use variance for religious use. In particular, the minimum requirement for the side yard setback is 30.3 feet while the existing side yards are 24.8 and 29.2 feet; and the minimum requirement for the rear yard setback is 89.7[2] feet while the existing rear yard setback is 84 feet. Despite these deficiencies, the Township's then zoning officer issued building permits and a certificate of occupancy to Salesian for the chapel and additional bedrooms, without requiring Salesian to apply for a d(3) variance.

---

[2] The Board maintains the minimum requirement is 179.4 feet pursuant to the Township's ordinance that requires doubling of the rear setback when a conditional variance is sought for religious use. § 92-210(D) (codifying conditional uses for "[c]hurches, synagogues, religious buildings and nonprofit schools."). However, that section of the ordinance applies when "such use [is] located in the B-1 and B-2 [z]ones[,]" which permit two-family dwellings. Here, the property is located in the "RA-60" residential zone, which is comprised of single-family dwellings. It is unclear from the record how the Board determined the doubling requirement here. Indeed, the Board's proofs are conflicting in this regard. For example, an April 2, 2015 memorandum of the Board's planner indicated the rear setback "shall be two times . . . the rear yard requirement for the zone[,]" but specifically listed the requirement as "89.7 feet[,]" i.e., the rear setback was not doubled to 179.4 feet.

Plaintiff seeks to use the property for "residential religious" purposes. In particular, local male undergraduate students, who are interested in expanding their Catholic faith with the potential to pursue vocations in the church, reside in the home. Residents participate in Bible study and prayer on the premises. Non-resident missionaries drive to the property weekly to participate in prayer. In addition, plaintiff holds bi-monthly formation meetings, attended by approximately thirty-five to forty people, on Monday nights from 8:30 p.m. to 10:00 p.m. Plaintiff's administrative activities are also conducted on the premises. The nature and extent of those activities were not fully developed in the record before the Board.

Prior to purchasing the property, plaintiff asked the Salesians to apply for a variance. The Salesians denied the request claiming, "[W]e[ ha]ve been here [twenty]-somewhat years, we[ ha]ve never done that, it[ i]s going to raise more questions . . . ." Soon after plaintiff purchased the property, plaintiff applied to the Board for a d(3) variance and a design waiver for driveway width. In her cover letter enclosing the application, plaintiff's counsel acknowledged the non-conforming side and rear setbacks on the property, but stated that the deficiencies were "truly minimal." The application indicated there would be "[n]o change to [the] property. The use is similar to the previous [owner's] use

as a religious residence with a private chapel for prayer and worship and bible study." Notably, plaintiff's application did not seek relief for a pre-existing non-conforming use. See N.J.S.A. 40:55D-70(d)(2). Neither plaintiff's application nor its public notice disclosed that plaintiff intended to use the property for administrative offices. Instead, plaintiff's public notice provided, in pertinent part:

> The application proposes a residence for Catholic missionaries with programs to further the religious mission of St. Paul's Outreach; creating a faith-filled environment, instructing college students in prayer, bible studies, evangelizing, and preparing students in the renewal of authentic Catholic life. . . . The proposal requires a conditional use variance for side and rear yard setbacks along with such variances and/or waivers that presently exist or that may be necessary for the development including parking. The proposal includes the use of an existing chapel as well [as] residential use.

The Board heard plaintiff's application on three non-consecutive days between April 7, 2015 and June 1, 2015. Plaintiff presented the testimony of two experts: Joseph Staigar, a licensed professional traffic engineer; and Kathryn Gregory, a licensed professional planner. Senior Mission Director Ed Moccia, Mission Leader Joseph Buganski, and Brother Judge LaSota also testified on plaintiff's behalf. Numerous local residents attended the hearings as objectors and questioned plaintiff's witnesses. The Board did not call any

witnesses, but John Lopos, a local resident represented by counsel, and Gordon Gemma, his licensed professional planner, testified in opposition to the application. The Board also considered documentary evidence, including the expert reports of applicant and the objectors, and memoranda and comments of the Board's planner, Heyer, Gruel and Associates.

At the conclusion of its meeting on October 6, 2015, the Board voted to deny plaintiff's application. Prior to the issuance of the Board's written resolution, plaintiff's counsel submitted a request for reconsideration of the Board's decision. Plaintiff argued that the Board failed to consider "any conditions that would ameliorate any adverse impact."

Specifically, although plaintiff was willing to relocate its large formation meetings to Seton Hall University (SHU), plaintiff maintained its "[h]ousehold [p]rogram requires that [its] missionaries have staff meetings, prayer, and rooms for administrative work at the residence." Because many of the missionaries are not SHU students, the "smaller group meetings [could not] be hosted at [SHU]." Further, plaintiff's religious mission "is to inculcate religious values in a home setting." Plaintiff claimed "[t]he Board's denial deprives . . . it[s] right to free expression of religion."

13

During its January 1, 2016 meeting, the Board summarily denied plaintiff's application for reconsideration. Thereafter, the Board memorialized its findings and decision in a sixteen-page resolution. The resolution summarized the testimony of the witnesses, the arguments of counsel and the objectors, and set forth the Board's findings of fact and conclusions of law.

Importantly, the Board referenced the testimony of plaintiff's witnesses regarding the proposed use of the property. The Board recognized plaintiff's "four core elements" in paragraph 24 of its resolution:

(i) The residential element whereby participants share a house and commit to living together and following Roman Catholic teachings, sharing chores, sharing expenses, praying each morning, eating dinner together at least twice per week and undertaking Bible study;

(ii) the faith formation program where twice per month groups of between [thirty-five to forty] non-resident students meet at the house on Monday evenings from 8:30 p.m. to 10:00 p.m.;

(iii) A "Fan Into Flame" religious retreat which occurs annually offsite; and

(iv) The School of Evangelization which occurs offsite.

Notably, the Board referenced the lack of testimony regarding plaintiff's "use [of] the residence as an administrative office for [its] statewide activities." The Board described the "[t]estimony on this use []as both vague and scant."

14

Further, the Board analyzed the issuance of a d(3) variance pursuant to the

Sica test, finding:

> 29.     In this case [plaintiff] proposes a religious/residential use which furthers religious freedom, an important public interest.  However, the detriments to the neighborhood and zone plan would be more than substantial.  During the hearing [plaintiff]'s attorney referred to [plaintiff's] website.  The Board takes administrative notice that the website identifies the house as the "New Jersey Mission Center."  A "Mission Center" is defined in [plaintiff]'s literature as "an operational hub that establishes and supports [plaintiff's] [c]hapters within a geographic region." ([Plaintiff's] 2014 Annual Report)    [Plaintiff] acknowledged that the uses to occur on the site were more than the residential program for residents.  The uses also included faith formation meetings on Monday evenings which included non-residents and could result in [thirty-five to forty] people at the house.  On Monday mornings the resident [m]issionary meets with seven non-resident [m]issionaries in the chapel.  Reference was made to use of the house as administrative offices for [plaintiff], <u>however, exact details of such use were never provided</u>.  As [plaintiff]'s New Jersey Mission Center[,] it can be expected that additional administrative office uses would occur.  Each of these gatherings would bring pedestrian and vehicular traffic to the site which already has an existing problem with cars parking in the front yard in violation of the Ordinance.  Applicant did not propose to provide additional parking in the rear stating that it believed it was not a suitable location.  Whether parking in the rear yard could be configured and buffered in a manner not entirely inconsistent with the double rear yard setback requirement is unknown as it was not part of the application.

A-0264-17T1

30. . . . In [plaintiff's request for reconsideration it] agreed to the following conditions: (i) no church service open to the general public and [plaintiff] agrees not to use the site for a homeless shelter, house for abused women and/or soup kitchen; (ii) the number of residents with cars would be limited to the number of parking spaces; (iii) no large meetings starting after 10 p.m. on weekdays; and (iv) [plaintiff would] plant [thirty-two] trees along the perimeter of the property . . . . The Board notes that previously during the hearing [plaintiff] had agreed to limit the number of residents at the premises, but that limitation was withdrawn.

31. On balance, the Board finds that the conditions proposed are insufficient to overcome the substantial detriments caused by the proposed use. The property is located in a residential zone where religious uses are permitted but only if they meet certain conditions. In this case[, plaintiff] proposes to locate its New Jersey Mission Center in the midst of a residential neighborhood on a lot which does not meet the setback requirements, especially for the rear yard, or have sufficient parking. There is an existing parking shortfall with [four] spaces existing. Applicant proposes to provide [eleven] parking spaces by using the two car garage (which is currently filled with belongings and not used for parking) and widening the driveway to provide additional parking along its sides. Two more spaces would be carved out to the right side of the driveway in a cutout. The Ordinance does not allow widening the driveway or parking in the front yard. [Plaintiff] never fully detailed the extent of its administrative office use at the site but headquartering [plaintiff]'s New Jersey offices in this home will attract even more visitors and parking. The Board finds that on balance the detriments outweigh the benefits of the use at this location.
[Emphasis added.]

Thereafter, plaintiff filed a four-count complaint in lieu of prerogative writs in the Law Division against both defendants, alleging the Board: (1) acted arbitrarily, capriciously and unreasonably; (2) failed to balance the positive and negative criteria for the variance; (3) was estopped from denying its use of a chapel by issuing permits and certificates of occupancy to Salesian; and (4) violated the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc to 2000cc-5.

Following a hearing on August 22, 2017, the trial court issued a terse oral decision, reversing the Board's decision and granting plaintiff's application for a d(3) variance, without imposing any conditions on plaintiff's use of the property. In doing so, the court granted relief under all of plaintiff's causes of action.

Specifically, in addressing the Sica factors, the court recognized plaintiff "is a religious organization, which obviously is a positive good." Finding there was "no difference" between the prior use of the property by the Salesians and the current use by plaintiff, the court did not find a detrimental effect in granting the variance. The court further determined plaintiff's proposed driveway expansion for additional parking spaces would not have a detrimental effect, referencing Staigar's "unrefuted" opinion that traffic would not be materially

affected. Notably, the court found reasonable conditions on the use were unnecessary "as long as the use continues to the use that it[ has] been up to this point."

Further, the trial court determined the Board was estopped from denying the d(3) variance based on Salesian's prior use. Citing Eltrym Euneva, LLC v. Keansburg Planning Board of Adjustment, 407 N.J. Super. 432 (Law. Div. 2008), the court observed the "defendant [in Euneva] was estopped from denying the plaintiff the right to [non-]conforming residential use, based on the prior issu[ance] of a [c]ertificate of [o]ccupancy." The court then determined Euneva "falls clearly on the four corners of this case, and clearly the application should be granted on the estoppel c[ount]." Specifically,

> [It has] not been disputed that prior building permits were issued . . . and that a prior [c]ertificate of [o]ccupancy was issued by the [Township]. It may have been [twenty-five] plus years ago, however the [Township] stuck with [its] decision previously, whether in fact the inspector clearly [did not] pick up on the fact that the side yard setbacks and the front and rear setbacks were not appropriate this [c]ourt finds [it is] of no moment. [The Township] waived that particular issue, and it was never pursued until this particular application occurred. And clearly I find it arbitrary and capricious and unreasonable that in fact [twenty-five] plus years later, all of [a] sudden they found that the requests should be denied based upon a minor issue with regard to the setbacks. So this [c]ourt does not find that the argument is persuasive.

18

Finally, without making findings of fact and conclusions of law, the trial court initially determined plaintiff did not meet its burden of proof under its RLUIPA count, then determined the issue was moot because the court granted plaintiff's application under the first three counts of its complaint. Nonetheless, the court again reversed course and determined it "d[id not] find a compelling government interest here." This appeal followed.

On appeal, defendants primarily contend the trial court erred because the Board's denial of plaintiff's d(3) application was adequately supported by its factual findings; plaintiff failed to establish good faith reliance on Salesian's prior use of the property; and the Board's decision did not substantially burden plaintiff's religious freedom and, as such, did not violate RLUIPA. They also contend plaintiff failed to fully disclose the nature and extent of its administrative functions. In sum, defendants seek reversal of the trial court's decision and order. In the alternative, they claim a remand to the Board is necessary to further clarify how the property will be utilized.

Adhering to our limited scope of review, we conclude the trial court inexplicitly substituted its judgment in reversing the Board's decision. Cell South, 172 N.J. at 81.

Initially, we consider the trial court's determination that the Board's decision was arbitrary, capricious and unreasonable in failing to properly assess the Sica factors. Our review of the record reveals that the Board was hampered by an incomplete and unclear presentation of plaintiff's use of the property and ameliorating conditions. Without a fully-developed record regarding plaintiff's use and conditions, the trial court incorrectly determined there was "no detriment" here. Indeed, the Board recognized those deficiencies in the concluding paragraph of its resolution:

> 37. Whether an alternate proposal for an administrative office use with (i) a more fully detailed description of the proposed limited administrative office use including the number of persons involved, the type and extent of administrative activities, and the necessity of this use on-site, (ii) the exact number and location of parking spaces, the number of residents with cars, and the anticipated parking demand for such proposed use, (iii) a more detailed landscape buffering plan, and (iv) addressing drainage concerns raised during the hearing, would be acceptable is not before the Board at this time and is undecided.

We agree and accordingly, we vacate the court's order pertaining to counts one and two of plaintiff's complaint and remand to the Board to conduct a rehearing to consider any uses and conditions that were not fully detailed during the hearings. In doing so, we also recognize that some of those uses and conditions were raised during plaintiff's presentation at the hearing and in its reconsideration application. Moreover, the objectors posed specific questions regarding the use of the property as plaintiff's New Jersey Mission Center. Plaintiff sought to clarify and supplement the conditions that could be imposed on its use, but the Board opted not to consider those suggestions. We conclude the Board erred in declining to consider that new information, and that a remand is necessary for this limited purpose. Additionally on remand, defendants should determine the applicability of the doubling provision set forth in § 92-210(D) to plaintiff's d(3) application, and that section's significance, if any, to conditions that could alleviate the negative criteria.

Turning to count three of plaintiff's complaint, the court's decision, in large part, was based on the mistaken belief that the property was a pre-existing non-conforming use. However, in its application for a d(3) variance, plaintiff did not seek relief as a pre-existing non-conforming use, as candidly acknowledged by plaintiff's counsel during her summation to the Board: "I [a]m

21

not asking you to find under section 68[3] that this was a prior non-conforming use." Accordingly, this issue was not before the Board, and the trial court erred in reversing the Board on that basis.

In its decision, the court also credited plaintiff's estoppel argument, which was not raised before the Board. That analysis was similarly improper. See Kramer, 45 N.J. at 289; Adams, 309 N.J. Super. at 583.

Moreover, estoppel is invoked against a municipality "only in very compelling circumstances, where the interests of justice, morality and common fairness dictate that course." Maltese v. Twp. of N. Brunswick, 353 N.J. Super. 226, 244-45 (App. Div. 2002). In essence, a municipality can be estopped if "the circumstances involve reliance on a good faith act of an administrative official, within the ambit of that official duty, which constitutes an erroneous and debatable interpretation of an ordinance." Scardigli v. Borough of Haddonfield Zoning Bd. of Adjustment, 300 N.J. Super. 314, 319-20 (App. Div. 1997). Good faith reliance by the party claiming estoppel is necessary. Grasso v. Borough of Spring Lake Heights, 375 N.J. Super. 41, 47-48 (App. Div. 2004) (recognizing that although it is rarely invoked, estoppel may be enforced if a property owner makes "substantial expenditures in good faith reliance on a

---

[3] N.J.S.A. 40:55D-68.

permit that was issued because of a municipal official's erroneous . . . interpretation of the zoning ordinance").

We are not persuaded by the trial court's reliance on <u>Euneva</u> to support its decision that the Board was estopped from denying the variances requested here. In <u>Euneva,</u> the Law Division determined the defendant borough was estopped from enforcing an ordinance against the plaintiff, who built an addition to their home, where the borough's building inspector failed to recognize a deficiency in a side yard setback. 407 N.J. Super. at 445-46. In finding the plaintiff reasonably relied on the building inspector's mistake, the court found the plaintiff relied on the borough's documents when deciding to purchase the property, and that the plaintiff sought multiple permits requiring borough inspections during the renovation process. <u>Id.</u> at 445. The borough's inspectors even commented that they were impressed with the improvements. <u>Ibid.</u>

Conversely, here, the trial court did not determine plaintiff reasonably relied on the issuance of building permits to Salesian. Indeed, prior to purchasing the property, plaintiff specifically requested that Salesian obtain a variance, presumably recognizing the setbacks were non-conforming. Further, by the time Salesian sold the property to plaintiff, its use was markedly different

from its past use, limited to a few priests residing at the premises. Accordingly, we find the Board was not estopped from denying the variance.

Finally, we consider plaintiff's fourth cause of action. RLUIPA sets forth the factors to be considered when determining whether the implementation or enforcement of a land use regulation imposes a substantial burden on the exercise of religion:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution –
>
> (A) is in furtherance of a compelling governmental interest; and
>
> (B) is the least restrictive means of furthering that compelling governmental interest.
>
> [42 U.S.C. § 2000cc(a)(1).]

To demonstrate a violation of the RLUIPA, a plaintiff must make a prima facie showing that the land use regulation imposed a substantial burden on religious exercise. See House of Fire, 379 N.J. Super. at 544-47. When that burden is met, the burden shifts to the local government to demonstrate that the land use regulation furthers a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest. Id. at 545.

In this action in lieu of prerogative writs, presumably, the parties did not engage in discovery nor seek a plenary hearing. R. 4:67-5. Nonetheless, the trial court summarily concluded defendants violated RLUIPA, without engaging in any meaningful analysis under the statute or governing case law. We decline to do so here, where plaintiff's application will be reconsidered by the Board. See House of Fire, 379 N.J. Super. at 547.

In sum, the trial court's oral opinion contained no analysis of whether the Board's conclusions were supported by the record, and did not attempt to relate the facts as found by the Board or to establish why those facts were unsupported by the record. We are therefore satisfied, after carefully reviewing the record, that the trial court essentially, and mistakenly, replaced the Board's judgment with its own. See Northeast Towers, 327 N.J. Super. at 495-96.

Reversed and remanded to the Board for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION